EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| Katia M. Silva Barreto | Certiorari |
|---|---|
| Recurrida | 2017 TSPR 185 |
| v. | 198 DPR ____ |
| Gonzalo F. Tejada Martell | |
| Peticionario | |

Número del Caso: CC-2016-431

Fecha: 1 de diciembre de 2017

Región Judicial de Bayamón

Abogada de la parte peticionaria:

      Lcda. Livia M. Rosado Bermúdez

Abogado de la parte recurrida:

      Por derecho propio

Materia: Derecho procesal apelativo: Una parte puede, mediante un solo recurso presentado ante el Tribunal de Apelaciones, impugnar dos determinaciones interlocutorias distintas emitidas en un mismo caso ante el Tribunal de Primera Instancia y cancelar los aranceles correspondientes a una sola acción revisoría.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Katia M. Silva Barreto

    Recurrida

      v.                    CC-2016-0431      *Certiorari*

Gonzalo F. Tejada Martell

    Peticionario

Opinión del Tribunal emitida por el Juez Asociado SEÑOR FELIBERTI CINTRÓN

En San Juan, Puerto Rico, a 1 de diciembre de 2017.

En el día de hoy nos corresponde atender la siguiente interrogante: ¿Puede una parte, mediante un solo recurso presentado ante el Tribunal de Apelaciones, impugnar dos determinaciones interlocutorias distintas emitidas en un mismo caso ante el Tribunal de Primera Instancia, y cancelar los aranceles correspondientes a una sola acción revisora? Por los fundamentos que discutimos a continuación, respondemos en la afirmativa.

## I. TRASFONDO FÁCTICO Y PROCESAL

La Sra. Katia M. Silva Barreto (señora Silva o recurrida) y el Sr. Gonzalo F. Tejada Martell (señor Tejada o peticionario), ambos oriundos de Perú,

estuvieron casados entre sí y procrearon dos hijos durante su matrimonio. Eventualmente la pareja se divorció y el Tribunal de Primera Instancia nombró a la señora Silva como madre custodia de ambos menores. Asimismo, se fijó la pensión alimentaria que el padre debía pagar para beneficio de sus hijos.

El 29 de mayo de 2013 la señora Silva solicitó al Tribunal de Primera Instancia autorización para trasladarse con sus hijos a Perú. El peticionario se opuso al traslado y solicitó la custodia de los menores. La juez a cargo refirió el caso a la Unidad Social de Relaciones de Familia y Asuntos de Menores para el estudio social correspondiente. Oportunamente, la Trabajadora Social rindió su informe recomendando el traslado de los menores a Perú, junto con su madre.

Tras una serie de eventos procesales, se celebró una vista para dilucidar la petición de la madre. El 23 de julio de 2015, el Tribunal de Primera Instancia autorizó el traslado provisional de los menores a Perú, por entender que era lo más beneficioso para el bienestar de los niños en ese momento. Entre las razones consignadas para conceder la solicitud de traslado, el tribunal mencionó que, en Perú, la señora Silva contaba con una excelente oferta de empleo con un salario de $3,000 mensuales, además de otros beneficios.

Así las cosas, el señor Tejada presentó una *Moción para Solicitar Créditos en Relación a Gastos Extraordinarios y Pensión Alimenticia*. A través de esta

moción, el peticionario pidió al tribunal que acreditase un pago que efectuó directamente a la recurrida a su deuda de pensión alimentaria con la Administración para el Sustento de Menores (ASUME).[1]  Igualmente, solicitó se ordenase a la señora Silva reembolsarle ciertas partidas correspondientes al trabajo de ortodoncia de sus hijos, así como mensualidades y otros gastos asociados a la escuela de los menores.  La juez a cargo del caso denegó esta moción.  La Resolución y Orden correspondiente se notificó el 9 de septiembre de 2015.

El señor Silva solicitó reconsideración de la denegatoria de su moción.  Mediante Resolución y Orden (**R&O #1**) fechada el 29 de septiembre de 2015 y notificada el **2 de octubre de 2015**, se declaró *No Ha Lugar* su solicitud de reconsideración.

De otra parte, el señor Silva también presentó una *Moción para Solicitar Deponer a la Trabajadora Social* que preparó el informe relacionado con el traslado de los menores a Perú.  A requerimiento del Tribunal de Primera Instancia, el peticionario argumentó su derecho a tomar la aludida deposición.  No obstante, el foro primario denegó su solicitud.  Esta determinación fue informada a las partes mediante Resolución y Orden que les fuera notificada el 9 de septiembre de 2015.  Inconforme, el señor Tejada solicitó reconsideración, la cual le fue denegada el 29 de septiembre de 2015.  La correspondiente Resolución y Orden

---

[1]     Posteriormente, la Sra. Katia M. Silva Barreto admitió haber recibido este dinero.

(**R&O #2**) igualmente se notificó a las partes el **2 de octubre de 2015.**

El 30 de octubre de 2015, el señor Tejada acudió al Tribunal de Apelaciones mediante un recurso de *certiorari*. Solicitó la revisión conjunta de las dos Resoluciones y Órdenes que declararon *No Ha Lugar* sus solicitudes de reconsideración relacionadas con: (1) el crédito y reembolso antes mencionado y (2) la toma de deposición a la Trabajadora Social. Ambas Resoluciones fueron emitidas coetáneamente el 29 de septiembre de 2015 y notificadas el 2 de octubre de 2015.

El foro apelativo intermedio desestimó el recurso por falta de jurisdicción, apoyado en el caso <u>M-Care Compounding</u> *et al.* v. <u>Depto. Salud</u>, 186 DPR 159 (2012). Específicamente, resolvió que el señor Tejada no podía utilizar un solo recurso para impugnar conjuntamente dos dictámenes emitidos separadamente. Indicó que, en su lugar, correspondía presentar dos recursos independientes y pagar los respectivos aranceles para que se reputaran válidos.[2]

El señor Tejada presentó entonces el recurso que nos ocupa donde plantea la siguiente interrogante como único error:

---

[2] La Resolución del Tribunal de Apelaciones desestimando el recurso se emitió el 29 de enero de 2016 y se notificó el 16 de febrero de 2016. Entretanto, el 8 de febrero de 2016, el señor Tejada presentó una *Moción Informativa* en la cual indicó que se celebró una vista de impugnación del informe de la Trabajadora Social, por lo cual, su solicitud para deponerla se tornó académica.

Incidió el Tribunal de Apelaciones al determinar que el recurso de *Certiorari* adolecía de nulidad y que por ende el Tribunal de Apelaciones carecía de jurisdicción por haberse presentado en un solo recurso la solicitud para que se revocaran dos (2) resoluciones del Tribunal de Primera Instancia que se notificaron el mismo día, de un mismo caso entre las mismas partes. Además que se desistió de una de ellas posteriormente.

El 28 de octubre de 2016 expedimos el auto de *certiorari* solicitado y habiendo vencido los términos correspondientes para que las partes sometieran sus respectivos alegatos, nos encontramos listos para resolver.[3]

## II. DERECHO APLICABLE

### A. Aranceles

La parte que somete un escrito de apelación o *certiorari* ante el Tribunal de Apelaciones viene obligada a pagar los derechos arancelarios correspondientes.[4] Ortiz v. Holsum, 190 DPR 511 (2014); M-Care Compounding *et al.* v. Depto. Salud, *supra.* De lo contrario, conforme dispone el Código de Enjuiciamiento Civil, el documento se reputará nulo y se tendrá por no presentado.[5] Ortiz v. Holsum, *supra*; M-Care Compounding *et al.* v. Depto. Salud, *supra*; Meléndez v. Levitt & Sons of PR, Inc., 106 DPR 437 (1997); Maldonado v. Pichardo, 104 DPR 778 (1976).

---

[3]    Cabe señalar que el peticionario presentó su alegato el 20 de enero de 2017. La recurrida, sin embargo, nunca sometió el suyo.

[4]    Véase *In re* Aprob. Derechos Arancelarios RJ, 192 DPR 397 (2015).

[5]    Véase Sec. 5 de la Ley Núm. 17 de 11 de marzo de 1915, según enmendada, 32 LPRA sec. 1481 (2017).

## B. Reglamento del Tribunal de Apelaciones

La Regla 17 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B (2012) (**Regla 17**), permite a varias personas afectadas por una misma sentencia presentar un solo recurso de apelación conjuntamente, siempre y cuando sus derechos en alzada sean compatibles. Igualmente autoriza al tribunal a consolidar apelaciones que han sido presentadas individualmente, cuando así lo estime pertinente, ya sea motu proprio o a solicitud de parte.[6] Paralelamente, la Regla 80.1 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B (2012), reconoce la potestad del tribunal a consolidar todo tipo de dictámenes, no sólo sentencias, con el fin de atenderlos simultáneamente.[7]

En M-Care Compounding *et al.* v. Depto. Salud, *supra*, tuvimos la oportunidad de interpretar la Regla 17 y, luego de un examen integral de la normativa relevante, resolvimos que, por analogía, sus disposiciones se podían extender a otras clases de recursos, aparte de apelaciones de sentencias como dispone taxativamente este precepto reglamentario. Asimismo, decretamos que la Regla 17

---

[6]      La Regla 17 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B (2012), dispone lo siguiente:

Si **dos (2) o más personas** tuvieren derecho a apelar **una sentencia** y sus derechos fueren tales que la acumulación fuere factible, podrán presentar un **escrito de apelación conjunto** y podrán comparecer subsiguientemente como una sola parte apelante. Las apelaciones de una sentencia podrán ser consolidadas por orden del Tribunal de Apelaciones expedida por iniciativa propia, a solicitud de parte o por estipulación de quienes sean partes en distintas apelaciones. (Énfasis nuestro).

[7]      Según la Regla 80.1 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B (2012):

Los recursos sobre una **sentencia, orden o resolución** podrán ser consolidados por orden del Tribunal de Apelaciones expedida por iniciativa propia o a solicitud de parte. (Énfasis nuestro).

únicamente contempla la presentación conjunta cuando más de una persona pretende recurrir de un mismo dictamen. En otras palabras, esta normativa procesal no permite a una parte agrupar determinaciones de varios casos en un mismo recurso. De manera que, cuando se trata de dictámenes en casos diferentes, la parte afectada debe someter los recursos separadamente y pagar los aranceles correspondientes para cada uno de ellos.

### C. Facultad del Tribunal Supremo

Conforme a nuestro ordenamiento, el derecho de todo ciudadano a que un tribunal de mayor jerarquía revise las determinaciones de un foro inferior es de origen estatutario, no constitucional. García Morales v. Mercado Rosario, 190 DPR 632 (2014); Pérez Soto v. Cantera Pérez, Inc. et al., 188 DPR 98 (2013); Gran Vista I v. Gutiérrez y otros, 170 DPR 174 (2007). "Por tanto, toca a la Asamblea Legislativa definir el alcance del mismo y concederlo con las limitaciones que tenga a bien hacer". R. Hernández Colón, *Práctica Jurídica de Puerto Rico, Derecho Procesal Civil,* 6ta ed., Pubs. LexisNexis de Puerto Rico, Inc., 2017, pág. 471. Claro está, la definición de ese alcance nunca podrá trastocar las facultades de este Tribunal, conferidas por el Artículo V, Sección 3 de la Constitución de Puerto Rico. Art. V, Sec. 3, Const. PR, LPRA, Tomo 1, ed. 2016, pág. 426.

Acorde lo anterior, la Legislatura optó por establecer un Tribunal de Apelaciones como foro intermedio entre el Tribunal de Primera Instancia y el Tribunal Supremo. Arts.

2.001 y 4.001 de la Ley de la Judicatura de Puerto Rico de 2003, Ley Núm. 201-2003, según enmendada, 4 LPRA secs. 24b y 24t (2010) (**Ley de la Judicatura**). Como parte del imperativo estatutario, el Tribunal de Apelaciones debe valerse de procesos judiciales más accesibles a la ciudadanía y "ofrecer acceso fácil, económico y efectivo a sus procedimientos, eliminando obstáculos y barreras que impidan impartir justicia apelativa a los ciudadanos con reclamos válidos". Art. 4.002 de la Ley de la Judicatura, 4 LPRA sec. 24u (2010).

Una vez implantados los diversos niveles adjudicativos de la Rama Judicial mediante legislación, le corresponde al Tribunal Supremo la tarea de diseñar y poner en vigor aquellas normas necesarias para facilitar una sana y efectiva administración de la justicia por parte de cada uno de esos foros. <u>Pérez Soto v. Cantera Pérez, Inc. *et al.*</u>, *supra*.

A esos efectos, el Art. 4.004 de la Ley de la Judicatura, 4 LPRA sec. 24w (2010), reconoce nuestra responsabilidad de diseñar el esquema reglamentario aplicable a los procedimientos ante el Tribunal de Apelaciones con el fin de "proveer un acceso fácil, económico y efectivo". A tono con lo anterior, aprobamos el Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B (2012), el cual rige el trámite y perfeccionamiento de los recursos apelativos junto con otras reglas y estatutos. <u>*In re* Aprobación Reglamento TA</u>, 162 DPR 444 (2004). Cónsono con el mandato estatutario, este cuerpo

reglamentario está dirigido a "[o]frecer acceso fácil, económico y efectivo al tribunal, eliminando obstáculos y barreras que impidan impartir justicia apelativa a los ciudadanos con reclamos válidos". Regla 2(1) del Reglamento del Tribunal de Apelaciones, *supra*.

Esta política de impulsar la economía judicial se insertó igualmente en nuestro ordenamiento procesal. A esos efectos, la Regla 1 de Procedimiento Civil, 32 LPRA Ap. V (2010), promueve "una solución justa, rápida y económica de todo procedimiento".

### III. DISCUSIÓN

Comenzamos por reafirmar el alcance de nuestra decisión en M-Care Compounding *et al.* v. Depto. Salud, *supra*, ello con el propósito de distinguir nuestros pronunciamientos en esa ocasión de la controversia que hoy tenemos ante nuestra consideración. En aquel momento, las partes afectadas por ciertas determinaciones del Departamento de Salud en **diversos casos** solicitaron la revisión judicial de los dictámenes de dicha agencia mediante un mismo recurso ante el Tribunal de Apelaciones. Asimismo, propusieron pagar un solo arancel por el trámite en alzada. De modo que, la controversia formulada entonces, giraba en torno a múltiples determinaciones administrativas en **casos separados**.

En el presente recurso, tenemos un escenario diferente. El señor Tejada elevó a la atención del Tribunal de Apelaciones dos resoluciones interlocutorias del foro primario sobre asuntos colaterales atendidos

dentro de un mismo caso. Las cuestiones tratadas en dichas resoluciones son: una solicitud del peticionario para llevar a cabo descubrimiento de prueba vinculado a la custodia de sus hijos menores y una petición de crédito y reembolso relacionada con los alimentos correspondientes a sus hijos. En otras palabras, a través de su recurso, el peticionario cuestionó dos determinaciones interlocutorias promulgadas por un mismo tribunal, en un mismo proceso judicial y notificadas en una misma fecha.

No cabe duda que quedaba a la discreción de la juez de instancia, como parte del manejo del pleito que tenía a su cargo, resolver las dos controversias planteadas por el señor Tejada para su consideración de manera separada, tal como lo hizo, o disponer de ellas conjuntamente en un solo escrito.[8] También es correcto que, en la eventualidad del foro primario haber dispuesto de los asuntos en cuestión en una misma resolución, se hubiesen podido atender esas determinaciones a través de un solo recurso. Es decir, bajo este supuesto, era viable impugnar estos asuntos, aunque diversos, dentro de un mismo trámite en alzada.

Entonces, ¿qué justificación existe para obligar a la parte peticionaria en este caso a presentar dos recursos? El mero hecho de que existan resoluciones separadas no es razón suficiente para exigirle a la parte en desacuerdo que presente igual número de recursos como de determinaciones

---

[8] No intimamos que un método de trabajo sea mejor a otro. Por el contrario, queda a la entera discreción de cada juez, como parte de su función de manejar los casos que le son asignados y administrar la justicia, optar por uno u otro según estime apropiado.

promulgadas. Esta trayectoria procesal redunda en perjuicio de aquellos promoventes cuyos litigios son atendidos por jueces que, por las razones que estimen pertinentes de acuerdo al caso en particular o por su método de trabajo, opten por disponer de asuntos pendientes de manera separada. Cuando se emiten múltiples resoluciones individuales, la parte interesada en cuestionarlas incurre en gastos adicionales de reproducción de documentos, notificación a las partes y al foro recurrido, trabajo administrativo y honorarios de abogado. Inclusive, en ocasiones viene obligada a fotocopiar los mismos documentos para diversos recursos. Estos costos pueden multiplicarse, dependiendo del número de recursos de que se trate, encareciendo sustancialmente los costos apelativos.

No vemos razón de peso para obligar a las partes que estén en desacuerdo con este tipo de determinaciones del foro primario en un mismo caso, a tener que presentar recursos separados ante el Tribunal de Apelaciones, si las fechas de las notificaciones correspondientes permiten acumularlas. Exigir este curso de acción, bajo estas circunstancias, milita en contra del principio de economía procesal que permea todo nuestro ordenamiento y el cual debemos tener como norte al descargar nuestra función de implantar la forma y manera de acceder al foro apelativo.

Cabe recordar que nuestro ordenamiento procesal requiere la agilización de los trámites ante los tribunales de manera que se promueva la economía judicial y se dé paso

a un proceso justo, rápido y económico. De igual forma, según provisto en la Ley de la Judicatura, las Reglas de Procedimiento Civil y el Reglamento del Tribunal de Apelaciones, los procesos que se instauren deben viabilizar un acceso dinámico, económico y efectivo ante el foro apelativo.

El mero hecho de que la situación que nos ocupa no se encuentre atendida específicamente en el Reglamento del Tribunal de Apelaciones no nos impide delinear criterios necesarios y equitativos para abordar un asunto como el presente que conlleva grandes repercusiones para los litigantes. A esos efectos, tenemos la encomienda de establecer pautas que promuevan que los trámites judiciales se efectúen de manera ágil, accesible y justa.

Por lo tanto, guiados por consideraciones de justicia y economía procesal, y en aras de promover un proceso más sencillo y económico, resolvemos que una parte tiene derecho a recurrir simultáneamente de varias resoluciones promulgadas en un mismo caso, siempre y cuando acuda al foro apelativo dentro del término provisto para ello bajo la normativa aplicable. En otras palabras, se permite acumular en un mismo recurso apelativo varias determinaciones interlocutorias del foro primario, emitidas en un mismo caso, condicionado a que el recurso se presente oportunamente en alzada.[9] Así pues, todo litigante tendrá

---

[9] Debe quedar claro que la decisión a la cual hoy llegamos no tiene el efecto de modificar los términos de los cuales disponen las partes para recurrir ante los foros revisores. Es decir, si una parte que acude en alzada desea agrupar dos o más determinaciones interlocutorias en el mismo trámite

la misma oportunidad de acudir al foro apelativo intermedio para la revisión de varias determinaciones interlocutorias del foro primario, indistintamente de si fueron acumuladas en un mismo escrito o en escritos separados, siempre y cuando presente su recurso dentro del término apelativo correspondiente.[10]

En vista a lo anterior, erró el Tribunal de Apelaciones al declararse sin jurisdicción para atender los reclamos del señor Tejada por considerar que debían haberse encausado a través de dos recursos separados y pagar los aranceles correspondientes a cada uno de ellos.

## IV. CONCLUSIÓN

Por los fundamentos anteriormente indicados, se revoca la Resolución emitida por el Tribunal de Apelaciones el 29 de enero de 2016 y se devuelve el caso a dicho foro para trámites ulteriores cónsonos con nuestros pronunciamientos en el día de hoy.

Se dictará Sentencia de conformidad.

Roberto Feliberti Cintrón
Juez Asociado

---

apelativo, el término máximo para así hacerlo transcurrirá a partir de la fecha de la notificación del primer dictamen recurrido.

[10]     Ahora bien, el hecho de que el término jurisdiccional para solicitar la revisión de alguna de las determinaciones interlocutorias recurridas haya vencido, no será impedimento para examinar el resto de las determinaciones que hayan sido presentadas oportunamente.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Katia M. Silva Barreto

  Recurrida

   v.     CC-2016-0431  *Certiorari*

Gonzalo F. Tejada Martell

  Peticionario

SENTENCIA

En San Juan, Puerto Rico, a 1 de diciembre de 2017.

  Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente Sentencia, revocamos la Resolución emitida por el Tribunal de Apelaciones el 29 de enero de 2016 y se devuelve el caso a dicho foro para trámites ulteriores cónsonos con nuestros pronunciamientos en el día de hoy.

  Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. La Jueza Asociada señora Pabón Charneco emitió una Opinión Concurrente.

       Juan Ernesto Dávila Rivera
      Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Katia M. Silva Barreto | | *Certiorari* |
| Recurrida | | |
| v. | CC-2016-0431 | |
| Gonzalo F. Tejada Martell | | |
| Peticionario | | |

Opinión Concurrente emitida por la Jueza Asociada señora Pabón Charneco.

En San Juan, Puerto Rico, a 1 de diciembre de 2017.

La Opinión que antecede "permite acumular en un mismo recurso apelativo varias **determinaciones interlocutorias** del foro primario, emitidas en un mismo caso, condicionado a que el recurso se presente oportunamente en alzada." Sin embargo, la controversia realmente ante nuestra consideración se circunscribe a determinar si una misma persona puede recurrir de dos (2) **resoluciones interlocutorias**, dictadas por el mismo tribunal, como parte del mismo proceso judicial, mediante la presentación de una sola Petición de *Certiorari*. (Énfasis suplido).

El *ratio decidendi* propuesto por la Opinión Mayoritaria es más amplio que la controversia ante nuestra consideración. Entretanto no se nos solicitó determinar si en un mismo recurso de apelación se puede recurrir de una combinación de resoluciones, sentencias parciales y

sentencias finales, cualquier pronunciamiento que aparente resolver tales controversias es puro *dictum.* Como demostraré, en algunos casos el Tribunal de Apelaciones ha desestimado un sinnúmero de recursos apelativos por precisamente haberse recurrido en estos de una combinación de resoluciones, sentencias parciales y sentencias finales. Sin embargo, en otros casos, el Tribunal de Apelaciones ha optado por resolver tales recursos en los méritos y, para justificar tal proceder, ha utilizado una variedad de razones. Por lo tanto, entiendo que no debemos extender el *ratio decidendi* a tal controversia. La misma no está ante nuestra consideración. De ser planteada en algún momento, entiendo que su resolución amerita hacer un análisis más completo e individualizado debido al impacto que puede tener en la eficiencia del Tribunal de Apelaciones a la hora de considerar y adjudicar los distintos recursos apelativos. Por entender que el análisis de la Opinión que antecede se extralimita innecesariamente de la controversia realmente planteada ante nos y por considerar necesario evaluar las posibles implicaciones que la presente controversia pudiera tener en los recaudos de la Rama Judicial, concurro.

Incorporo por referencia los antecedentes fácticos que dieron génesis a la controversia de autos, según fueron reseñados en la Opinión del Tribunal. A continuación, paso a delinear el derecho aplicable al caso que nos ocupa y esbozo el análisis que entiendo era

meritorio realizar para disponer apropiadamente de la controversia ante nuestra consideración.

I

A.

Como cuestión de umbral, examinamos la norma pautada en *M-Care Compounding et al. Depto Salud,* supra, en aras de evaluar la extensión de la misma y determinar si esta es aplicable al caso de autos.

El Departamento de Salud emitió **dos (2) resoluciones** en **dos (2) procedimientos administrativos distintos**, en los que varias farmacias solicitaron Certificados de Necesidad y Conveniencia (CNC) para instituir ciertos programas de salud en el hogar.[11] Tras haber agotado los remedios administrativos disponibles, **dos (2) entidades** afectadas por la concesión de los CNC recurrieron de las **dos (2) resoluciones administrativas** mediante la presentación de **un (1) recurso de revisión judicial**.[12]

Dos (2) de las farmacias que obtuvieron los CNC objetaron la presentación del recurso de revisión en conjunto.[13] Señalaron que dicho recurso constituyó una

---

[11] Las farmacias fueron: (1) M-Care Compounding Pharmacy/M-Care Medical Supply, Inc.; (2) Island Infusion Pharmacy, Inc.; (3) SPS Specialty Pharmacy Services, Inc.; (4) Vision Infusion Services, Inc. (Vision); (5) Optima Infusion Pharmacy, Inc. (Optima) y (6) Special Care Pharmacy Services, Inc.

[12] Estas dos entidades fueron la Asociación de Enfermería Visitante Gregoria Auffant, Inc. y el Programa de Servicios de Salud en el Hogar Géminis.

[13] Vision y Optima.

consolidación *motu proprio* de dos (2) recursos de revisión de dos (2) resoluciones administrativas distintas. Además, indicaron que debido a que los recursos de revisión debieron haberse presentado por separado –uno (1) por cada resolución administrativa- no se cancelaron aranceles suficientes, por lo que el recurso nunca fue debidamente presentado y el Tribunal de Apelaciones carecía de jurisdicción para atenderlo. El foro *a quo* denegó la solicitud de desestimación.

Inconformes, acudieron ante nos y solicitaron la revocación de la Resolución emitida por el foro *a quo.* En síntesis, luego de analizar la Regla 17 del Tribunal de Apelaciones, 4 LPRA Ap. XII-B, y aplicarla por analogía a los recursos de revisión judicial, resolvimos que **no se podían presentar recursos conjuntos para revisar resoluciones administrativas de casos diferentes**. Ello, debido a que no se cumplía con el segundo requisito para la presentación de recursos conjuntos, a saber: que lo que se pretendiera recurrir fuera un mismo dictamen. *M-Care Compounding et al. v. Depto. Salud,* supra. Por ende, indicamos que las recurridas debieron presentar los recursos de revisión de sus respectivas resoluciones administrativas por separado y, una vez presentados y cancelados los aranceles correspondientes, de así desearlo, debieron solicitar la consolidación de estos en virtud de la Regla 80.1 del Reglamento del Tribunal de Apelaciones, *supra.*

B.

La Regla 17 del Tribunal de Apelaciones, *supra,* contempla dos mecanismos distintos, a saber: (1) la presentación de apelaciones conjuntas y (2) la consolidación de apelaciones. *M-Care Compounding et al. v. Depto. Salud,* supra. A pesar del sinnúmero de reglamentos que han regido nuestra práctica apelativa, la referida disposición ha permanecido prácticamente intacta.[14] Actualmente, dicha regla dispone que:

> Si dos o más personas tuvieren derecho a apelar una sentencia y sus derechos fueren tales que la acumulación fuere factible, podrán presentar un escrito de apelación conjunto y podrán comparecer subsiguientemente como una sola parte apelante. Las apelaciones de una sentencia podrán ser consolidadas por orden del Tribunal de Apelaciones, expedida por iniciativa propia, a solicitud de parte o por estipulación de quienes sean partes en distintas apelaciones. Regla 17 del Tribunal de Apelaciones, *supra.*

Por un lado, la apelación conjunta es el mecanismo en virtud del cual dos (2) o más personas pueden recurrir de una sentencia mediante la presentación de un solo recurso de apelación. Para hacer uso de la apelación conjunta se requiere el cumplimiento de tres requisitos, a saber: (1) que dos o más personas tengan derecho a apelar; (2) que lo que se pretende apelar sea una misma sentencia y

---

[14] La Regla 17 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XII-B, titulada *Apelaciones conjuntas o consolidación de apelaciones*, ha formado parte del Reglamento del Tribunal de Apelaciones desde que se aprobó originalmente el 9 de noviembre de 1992. Véanse: Regla 17 del Reglamento del Tribunal de Apelaciones, supra; Regla 17 del Reglamento del Tribunal de Circuito de Apelaciones, aprobado el 1 de mayo de 1996; Regla 15(B) del Reglamento del Tribunal de Circuito de Apelaciones, aprobado el 13 de enero de 1995; Regla 14(B) del Reglamento del Tribunal de Apelaciones, aprobado el 9 de noviembre de 1992.

(3) que los derechos de las partes sean acumulables, lo cual impide que estas posean intereses incompatibles o antagónicos. *M-Care Compounding et al. v. Depto. Salud*, supra. En estos casos, se le permite a dos o más partes comparecer como una sola parte apelante mediante la presentación de un solo recurso de apelación, en consideración a que sus intereses se encuentran similarmente situados con respecto a la sentencia que pretenden apelar. Según indicamos en *M-Care Compounding et al. v. Depto. Salud,* supra, las normas relativas a la presentación de apelaciones conjuntas aplican por analogía a la presentación de recursos de revisión conjuntos. Ello significa que si dos o más personas tienen derecho a recurrir de una resolución u orden y sus derechos son tales que la acumulación es practicable, podrán presentar un recurso de *certiorari* conjunto y comparecer subsiguientemente como una sola parte recurrente.

Por otro lado, la consolidación de apelaciones es el mecanismo en virtud del cual el foro *a quo* puede ordenar que dos (2) o más recursos de apelación sean atendidos y resueltos simultáneamente. La consolidación de apelaciones requiere que: (1) se hayan presentado dos o más apelaciones sobre una sentencia y (2) el tribunal ordene la consolidación, ya sea *motu proprio*, a solicitud de parte o por estipulación de quienes sean partes en distintas apelaciones. *M-Care Compounding et al. v. Depto. Salud,* supra. Al amparo de la Regla 80.1 del Reglamento del Tribunal de Apelaciones, *supra,* los requisitos para la

consolidación de apelaciones aplican igualmente para la consolidación de otros recursos de revisión. *M-Care Compounding et al. v. Depto. Salud,* supra.

### C.

Los procedimientos relativos a la revisión de dictámenes del foro de instancia se tramitan conforme a las leyes aplicables, las Reglas de Procedimiento Civil y las reglas adoptadas por este Tribunal. Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1 (2010). Examinemos el lenguaje de las distintas disposiciones aplicables al recurso de *certiorari,* para determinar si alguna de estas dispone o limita el número de dictámenes que pueden ser revisados mediante la presentación de un recurso de esta naturaleza.

Hacemos una primera parada en la Ley Núm. 201-2003, según enmendada, 4 LPRA sec. 24, *et seq.* Al instituir el Tribunal de Apelaciones como foro apelativo intermedio en nuestro Tribunal General de Justicia, la Asamblea Legislativa delimitó preliminarmente su competencia. Véase: Art. 4.006 de la Ley Núm. 201-2003, *supra.* En lo relativo al recurso de *certiorari*, se circunscribió a disponer que el foro *a quo* conocería "[m]ediante auto de *Certiorari* expedido a su discreción, de cualquier resolución u orden dictada por el Tribunal de Primera Instancia".

Por su parte, la Regla 52.1 de Procedimiento Civil regula, *inter alia,* los escenarios en los cuales se puede recurrir de una orden o resolución interlocutoria emitida

por el foro de instancia. Íd. A estos efectos, dispone que: "[e]l recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia" solo se expedirá por el Tribunal de Apelaciones si se recurre de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción dispositiva, entre otras. Por otro lado, la Regla 52.2 de Procedimiento Civil, *supra,* dispone el término que tiene una parte para presentar el recurso de *certiorari* ante el Tribunal de Apelaciones. Específicamente, establece que "los recursos de *certiorari* al Tribunal de Apelaciones para revisar resoluciones u órdenes del Tribunal de Primera Instancia" deberán presentarse dentro del término de treinta (30) días, a partir de la fecha de notificación de la resolución u orden recurrida.

La Parte VI del Reglamento del Tribunal de Apelaciones contiene las normas relativas al perfeccionamiento de los recursos de *certiorari* presentados ante dicho foro. 4 LPRA Ap. IX, Rs. 31-40. La Regla 32(D) establece que el recurso de *certiorari* para revisar "cualquier otra resolución u orden […] del Tribunal de Primera Instancia" se formalizará con la presentación del recurso dentro de los treinta (30) días siguientes, a partir del archivo en autos de una copia de la notificación de la resolución u orden recurrida. En cuanto al contenido de la petición de *certiorari,* la Regla 34(C) requiere, *inter alia,* que se incluya en el cuerpo del recurso: una referencia a la decisión objeto de

revisión; un señalamiento de los errores que a juicio del peticionario cometió el Tribunal de Primera Instancia y una discusión de los errores señalados. En cuanto al apéndice, la Regla 34(E) requiere que el mismo contenga la decisión del foro primario objeto de revisión y, de haberla, la notificación del archivo en autos. Además, se debe incluir toda otra resolución u orden en la que se discuta expresamente cualquier asunto planteado en la solicitud de *certiorari* o que sea relevante a la misma.

Tras examinar las disposiciones estatutarias y reglamentarias relacionadas al recurso de *certiorari* no encontramos disposición alguna que limite o establezca el número de resoluciones interlocutorias de las cuales se puede recurrir en un solo recurso. Examinemos el propósito y los objetivos del Reglamento del Tribunal de Apelaciones.

D.

Todo ciudadano tiene un derecho estatutario a la revisión judicial. *Pérez Soto v. Cantera Pérez,* 188 DPR 98 (2013). Una vez la Asamblea Legislativa reconoce tal derecho, es este Tribunal el llamado a diseñar e implementar un sistema de normas coherentes para fomentar la más adecuada y efectiva administración de la justicia. Así lo reconoció la Asamblea Legislativa en el Art. 2.002 de la Ley Núm. 201-2003, *supra.*

El Tribunal de Apelaciones fue instituido para proveerle a la ciudadanía un foro apelativo intermedio que revisara, como cuestión de derecho, las sentencias finales

del Tribunal de Primera Instancia, las decisiones finales de las agencias administrativas y, discrecionalmente, las resoluciones u orden dictadas por el Tribunal de Primera Instancia. 4 LPRA sec. 24u. En cuanto a la función revisora del foro *a quo*, el Art. 4.002 de la Ley Núm. 201-2003 dispone que este "[d]eberá ofrecer acceso fácil, económico y efectivo a sus procedimientos, eliminando obstáculos y barreras que impidan impartir justicia apelativa a los ciudadanos con reclamos válidos". Íd.

La Asamblea Legislativa le confirió a esta Curia la encomienda de aprobar las reglas internas relativas a la organización y los procedimientos que habrían de regir en el Tribunal de Apelaciones. Al hacerlo, puntualizó que el cuerpo reglamentario a adoptarse debía "promover un acceso fácil, económico y efectivo [al Tribunal de Apelaciones]" y debía contener, sin limitación alguna, "reglas dirigidas a reducir al mínimo el número de recursos desestimados por defectos de forma o de notificación,[…]". 4 LPRA sec. 24w.

En cumplimiento con este mandato, el Tribunal Supremo de Puerto Rico aprobó el Reglamento Transitorio del Tribunal de Apelaciones del 18 de noviembre de 2003, el cual fue sustituido eventualmente por el Reglamento del Tribunal de Apelaciones vigente. *In re Aprobación del Tribunal de Apelaciones,* 162 DPR 444 (2004).

El Reglamento del Tribunal de Apelaciones recoge los propósitos enunciados en la Ley Núm. 201-2003. Sin embargo, este Tribunal consideró importante extender los propósitos y esfuerzos a los cuales nuestro foro apelativo

intermedio debía ceñirse. En atención a ello, adoptamos un reglamento que hiciera al foro *a quo* uno más eficiente. Regla 2 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XII-B. El propio Reglamento dispone que su norte es:

> (1) **Ofrecer acceso fácil, económico y efectivo** al tribunal, eliminando obstáculos y barreras que impidan impartir justicia apelativa a los ciudadanos con reclamos válidos.
> (2) **Promover la efectiva, rápida y uniforme adjudicación** de casos complejos, procedimientos especiales o asuntos que ameriten atención particular.
> (3) **Implantar el principio rector de que las controversias judiciales se atiendan en los méritos y no se desestimen los recursos por defectos de forma** o de notificación que no afecten los derechos de las partes.
> (4) . . .
> (5) **Establecer mecanismos y sistemas eficientes** para la clasificación de recursos, **el movimiento de los casos y el término de su resolución.** 4 LPRA XII-B (Énfasis suplido).

### E.

Como norma general, el pago de los aranceles de presentación es un requisito *sine qua non* para el perfeccionamiento de los recursos apelativos. El cobro de estos aranceles permite sufragar los gastos inherentes a todo proceso judicial. Véase: *Gran Vista I v. Gutiérrez y otros,* 170 DPR 174, 188 (2007). El pago y la cancelación de aranceles es de tal importancia que, el no adherir los sellos de rentas internas al recurso apelativo presentado, de ordinario, priva al foro apelativo de jurisdicción y conlleva la desestimación del recurso. *M-Care Compounding et al. v. Depto. Salud,* supra; *Meléndez v. Levitt & Sons of P.R., Inc.,* 106 DPR 437 (1977); *Maldonado v. Pichardo,*

104 DPR 778 (1976). Véase además: Sec. 5 de la Ley Núm. 17 de 11 de marzo de 1915, según enmendada, 32 LPRA sec. 1481. De esta manera, se evita que los litigantes defrauden al erario. *Salas v. Baquero,* 47 DPR 108, 113-114 (1934).

El Código de Enjuiciamiento Civil dispone lo relativo al pago de los aranceles. Sin embargo, la Ley Núm. 47-2009, según enmendada, modificó parcialmente tales disposiciones. 32 LPRA sec. 1477. *Inter alia,* fijó los nuevos derechos arancelarios pagaderos a la hora de tramitar acciones civiles en los tribunales. Asimismo, reconoció la facultad de este Tribunal para disponer, vía resolución, los derechos que habrán de pagarse en la tramitación de las acciones civiles en el Tribunal General de Justicia y en otros servicios prestados por la Rama judicial. Art. 3 de la Ley Núm. 47-2009.

Cónsono con la facultad que nos fue conferida, el 24 de septiembre de 2010, aprobamos una Resolución en la que se adoptaron nuevos derechos arancelarios. Véase: *In re Aprobación Der. Arancelarios RJ*, 180 DPR 232 (2010). No obstante, los hasta entonces nuevos derechos arancelarios no fueron inmunes a cambios. El 9 de marzo de 2015, una mayoría de este Tribunal aprobó otra Resolución en virtud de la cual se instituyó un nuevo esquema de derechos arancelarios pagaderos a los(as) Secretarios(as), los(as) Alguaciles(as) y otro Personal de la Rama Judicial que ejerce funciones de recaudación. Véase: *In re Aprob.*

*Derechos Arancelarios RJ,* 2015 TSPR 21, 192 DPR 397 (2015).

Los incisos (K) al (P) de la mencionada Resolución regulan los derechos de presentación que deberá pagar todo litigante a la hora de presentar el recurso apelativo correspondiente. En lo atinente a la controversia que nos ocupa, el inciso (N) dispone que "**[p]or cada escrito** de apelación civil o **de *certiorari*** en el Tribunal de Apelaciones" se pagarán ciento dos dólares ($102.00) en sellos de rentas internas. (Énfasis suplido).

Luego de examinar la normativa jurisprudencial pautada en *M-Care Compounding et al. v. Depto. Salud,* supra, y de considerar los estatutos y demás disposiciones reglamentarias concernidas al recurso de *certiorari*, nos encontramos en posición de resolver.

III

El peticionario señaló como único error que el foro *a quo* incidió al decretarse sin jurisdicción y desestimar el recurso de *certiorari* basándose en *M-Care Compounding et al. v. Depto. Salud,* supra, e interpretando que tal precedente prohíbe que una parte recurra de dos (2) o más resoluciones interlocutorias emitidas en un mismo proceso judicial mediante la presentación de un solo recurso de *certiorari.* Tiene razón.

A.

En primer lugar, el contexto fáctico que motivó nuestro *ratio decidendi* en *M-Care Compounding et al. v. Depto. de Salud*, supra, es perfectamente distinguible al

del caso de autos. Por un lado, en *M-Care Compounding Pharmacy v. Depto. de Salud,* supra, resolvimos que **dos (2) personas** no podían presentar **un (1) recurso de revisión conjunto** para solicitar la revisión de **dos (2) resoluciones administrativas** emitidas en **dos (2) procedimientos administrativos separados e independientes entre sí**. Por otro lado, en el recurso de *certiorari* que nos ocupa, **una (1) misma parte** recurre de **dos (2) resoluciones** emitidas como parte de **un (1) mismo proceso judicial**. Como corolario, erró el foro *a quo* al aplicar irreflexivamente dicho precedente al caso de epígrafe y desestimar *ipso facto* el recurso que nos ocupa.

En segundo lugar, no estamos ante dos o más personas recurriendo de un mismo dictamen y procediendo como una parte recurrente. Simple y llanamente estamos ante una parte que recurrió de dos (2) resoluciones interlocutorias en un solo recurso de *certiorari*. Consecuentemente, ni la Regla 17 ni la Regla 80.1 del Reglamento del Tribunal de Apelaciones, *supra*, aplican al caso de epígrafe. Dichas disposiciones reglamentarias parten de una premisa: la concurrencia de dos (2) o más recurrentes. Por un lado, la Regla 17 **le permite** a varias partes –que recurren del mismo dictamen y cuyos intereses son acumulables– presentar un recurso de revisión conjunto y comparecer como una sola parte recurrente. Por otro lado, la Regla 17 (en cuanto a apelaciones) y la Regla 80.1 (en cuanto a otros recursos de revisión) **permiten** que una o varias personas que hayan recurrido de un dictamen le soliciten

al foro *a quo* la consolidación de los distintos recursos de revisión que presentaron. Ambas disposiciones **permiten** el uso de mecanismos procesales fundados en consideraciones de economía procesal y que pretenden asegurar una sana administración de la justicia. Ahora bien, ninguna de estas contempla el escenario ante nos. En fin, ni la Regla 17 ni la Regla 80.1 del Reglamento del Tribunal de Apelaciones, *supra,* permite ni prohíbe que una parte recurra de dos (2) resoluciones interlocutorias dictadas en el mismo proceso judicial mediante la presentación de un solo recurso de certiorari.

En tercer lugar, la Ley de la Judicatura, las Reglas de Procedimiento Civil ni el Reglamento del Tribunal de Apelaciones especifican o limitan el número de resoluciones interlocutorias que pueden ser revisadas mediante la presentación de un recurso de *certiorari.* En ausencia de disposición estatutaria o reglamentaria que permita o prohíba a una parte a recurrir de dos resoluciones en un mismo recurso de *certiorari,* nos vemos obligados acudir a la Regla 2 del Tribunal de Apelaciones, *supra*, relativa a la interpretación y los propósitos del Reglamento del Tribunal de Apelaciones, *supra.*

B.

Requerir la presentación de un recurso de *certiorari* por cada resolución u orden interlocutoria, junto con la cancelación de los aranceles correspondientes, trastocaría los objetivos y principios subyacentes al Reglamento del

Tribunal de Apelaciones, *supra*. Particularmente, exigiría multiplicidad de esfuerzos en la preparación de recursos de *certiorari* para que cumplan con los requisitos de forma que exige el Reglamento del Tribunal de Apelaciones, *supra*. Al final, todos estos esfuerzos se traducirían en tiempo y dinero. Específicamente, implicaría requerir a los recurrentes, en ciertas instancias, a reproducir los mismos documentos (i.e. alegaciones, apéndice, transcripciones de prueba oral) para distintos recursos, con la asunción de costo que ello implica. Como resultado, multiplicaría el costo de notificación de los recursos. En fin, restringiría el acceso al Tribunal de Apelaciones y como corolario el ejercicio del derecho a una revisión judicial.

Por otro lado, permitir la presentación de recursos de *certiorari* en los que se solicite la revisión de varias resoluciones interlocutorias, le permitiría al Tribunal de Apelaciones disponer de dos (2) o más recursos, que de ordinario se hubieran presentado por separado, al mismo tiempo. Igualmente, disminuiría la cantidad de documentos que serían acompañados con los recursos de revisión. Asimismo, promovería la presentación de menos recursos, por lo que aliviaría los esfuerzos administrativos y operacionales del personal del foro *a quo*. Además, evitaría el fraccionamiento de controversias relacionadas a un mismo caso. Consecuentemente, militaría a favor de la economía judicial, agilizaría los trámites ante los tribunales y, de esta manera, contribuiría a la solución

justa, rápida y económica de las acciones civiles pendientes ante las distintas Salas del Tribunal de Primera Instancia.

Por todo lo anterior, entiendo que una misma persona **puede** recurrir de dos (2) o más resoluciones u órdenes interlocutorias, emitidas en un mismo proceso judicial, mediante la presentación de un solo recurso de *certiorari.* Así, una parte adversamente afectada por dos o más resoluciones u órdenes **puede optar** por recurrir de estas en un solo recurso de *certiorari* o en recursos separados. La norma aquí pautada pretende promover el acceso fácil, económico y efectivo al Tribunal de Apelaciones. Asimismo, procura contribuir a la rápida, efectiva y uniforme adjudicación de recursos.

Ahora bien, la norma aquí adoptada no altera ni exime a las partes de cumplir con su obligación de observar el cumplimiento estricto de las disposiciones reglamentarias relativas al perfeccionamiento del recurso de *certiorari* y su jurisprudencia interpretativa. Véanse: Reglas 31-40 del Tribunal de Apelaciones, *supra.* Tampoco los releva de cumplir con los términos reglamentarios dispuestos para su presentación. En cuanto a este particular, una parte podrá acumular dos (2) o más resoluciones u órdenes interlocutorias en un recurso de *certiorari* siempre y cuando cumpla con el término reglamentario para ello, con respecto a todas las resoluciones u órdenes cuya revisión

se solicite.[15] Por lo tanto, un recurso de *certiorari* en el que se recurra de una o más resoluciones interlocutorias deberá ser presentado dentro de los treinta días siguientes a la fecha del archivo en autos de una copia de la notificación de la resolución u orden recurrida de mayor antigüedad.[16]

C.

Tomando en consideración la normativa anterior, evaluemos su aplicación a los antecedentes fácticos que suscitaron la controversia de autos.

En la Petición de *Certiorari* que presentara el peticionario en el Tribunal de Apelaciones el 30 de octubre de 2015 este solicitó la revisión de dos (2) resoluciones interlocutorias.[17] El Tribunal de Primera Instancia notificó ambas resoluciones el 2 de octubre de 2015. Por lo tanto, el peticionario recurrió oportunamente de ambas resoluciones. Además, según expresamos, el peticionario podía cancelar ciento dos dólares ($102.00) en aranceles por el escrito de *certiorari* presentado, independientemente de que en el mismo hubiera solicitado

---

[15] La Regla 32(D) del Tribunal de Apelaciones, Ap. XII-B, dispone que el recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias deberá ser presentado "dentro de los treinta días siguientes a la fecha del archivo en autos de una copia de la notificación de la resolución u orden recurrida. Este término es de cumplimiento estricto."

[16] El foro a quo únicamente estará en posición de resolver los señalamientos de error relacionados con las resoluciones u órdenes respecto a las cuales se recurrió a tiempo.

[17] Petición de *Certiorari,* Apéndice, págs. 34-35.

la revisión de dos (2) resoluciones. Ello, debido a que, según la normativa aquí adoptada, podía recurrir de dos (2) o más resoluciones en su escrito de *certiorari* y, a fin de cuentas, la cantidad a pagar en sellos de rentas internas es **por escrito**, mas **no por señalamiento de error ni por dictamen recurrido**. Véase: *In re Aprob. Derechos Arancelarios RJ,* supra, pág. 3.

En fin, y conforme a todo lo anterior, erró el Tribunal de Apelaciones al decretarse sin jurisdicción y desestimar sin más el recurso de *certiorari* presentado por el peticionario.

D.

Ahora bien, en el descargo responsable de nuestra función judicial, realizamos un análisis estadístico para evaluar el impacto, si alguno, que podría tener la nueva normativa adoptada en los recaudos de la Rama Judicial, en la operación y funcionamiento de los tribunales y, en última instancia, en el acceso a la justicia de todos los ciudadanos que acuden diariamente a nuestro foro apelativo intermedio para ejercer su derecho a una revisión judicial. Anticipamos que la norma aquí adoptada no tendrá un impacto adverso significativo en los recaudos de la Rama Judicial. Nos explicamos.

Desde que pautamos la norma de *M-Care Compounding et al. v. Depto. Salud, supra,* se han publicado un total de doscientos ochenta (280) Resoluciones y Sentencias en las

que el Tribunal de Apelaciones lo ha citado.[18] En la gran mayoría de los casos en los que el foro *a quo* ha descansado en *M-Care Compounding et al. v. Depto. Salud,* supra, lo ha hecho para justificar la desestimación de recursos de revisión por una de dos razones, a saber: (1) por no haberse pagado los aranceles correspondientes o (2) por no haberse cumplido con los requisitos de forma establecidos en el Reglamento del Tribunal de Apelaciones para el perfeccionamiento de los recursos de revisión. Los recursos que el foro *a quo* ha desestimado por haberse pretendido en estos la revisión de varios dictámenes representan solo una fracción de los recursos que el Tribunal de Apelaciones ha desestimado por falta de jurisdicción. Veamos.

En el **año fiscal 2012-13**, el foro *a quo* desestimó novecientos veinticuatro (924) recursos por carecer de jurisdicción.[19] Sin embargo, en dicho año no se desestimó

---

[18] A la fecha de hoy 7 de noviembre de 2017. El análisis está basado en las Resoluciones y Sentencias del Tribunal de Apelaciones que han sido publicadas en *Westlaw*, uno de los servicios principales de investigación jurídica en línea utilizados por abogados y demás miembros de la profesión. El Tribunal de Apelaciones no publica sentencias ni resoluciones sobre asuntos de menores ni sobre asuntos regulados por una ley que establezca que el proceso es confidencial. Sin embargo, el análisis de la data disponible brinda un aproximado e ilustra que el recurrir de varios dictámenes en un mismo recurso apelativo es sólo uno de los varios fundamentos que utiliza el Tribunal de Apelaciones para desestimar recursos por falta de jurisdicción y representa solo una fracción de los recursos desestimados bajo ese fundamento.

[19] De los novecientos veinticuatro (924) recursos desestimados por falta de jurisdicción, trescientos setenta y siete (377) recursos, equivalente a un cuarenta punto siete por ciento (40.7%), fueron desestimados por ser prematuros. Asimismo, doscientos cincuenta y dos (252) recursos, equivalente a un veintisiete punto tres por ciento

ninguna petición de *certiorari* por haberse recurrido en ella de dos o más resoluciones, como en el caso de autos, equivalente a un cero por ciento (0%) de los recursos desestimados por falta de jurisdicción.[20] En el **año fiscal 2013-14**, el foro *a quo* desestimó ochocientos noventa y un (891) recursos por falta de jurisdicción.[21] No obstante, sólo desestimó una (1) petición de *certiorari* por haberse recurrido en ella de dos o más resoluciones interlocutorias, equivalente a un cero punto once por ciento (0.11%) de los recursos desestimados por falta de

_____

(27.3%), se desestimaron por haberse presentado tardíamente. Solamente doscientos noventa y seis (296) recursos, equivalente a un treinta y dos por ciento (32%), se desestimaron por otros fundamentos. Véase, *Informe Estadístico del Tribunal de Apelaciones*, San Juan, Puerto Rico, Año Fiscal 2012-13, págs. 30-32.

[20] El Tribunal de Apelaciones desestimó al menos un (1) recurso en el que se pretendió la revisión de dos o más dictámenes mediante la presentación de un solo recurso de revisión, equivalente a un cero punto treinta y cuatro por ciento (0.34%) de los recursos desestimados por falta de jurisdicción por fundamentos ajenos a la temporalidad de la presentación del recurso. No obstante, se desestimó aplicando estrictamente lo resuelto en *M-Care Compounding et al. v. Depto. Salud*, supra, pues se trataba de varias resoluciones administrativas recurridas conjuntamente. Véase, *Antonetti Zequeira v. Fondo del Seguro del Estado*, KLRA201201067 (Resolución del 19 de abril de 2013).

[21] De los ochocientos noventa y un (891) recursos desestimados por falta de jurisdicción, trescientos treinta y cuatro (334) recursos, equivalentes a un treinta y siete punto cinco por ciento (37.5%), fueron desestimados por ser prematuros. Asimismo, doscientos treinta y siete (237) recursos, equivalente a un veintiséis punto seis por ciento (26.6%) fueron desestimados por haberse presentado tardíamente. Solamente trescientos veinte (320) recursos, equivalente a un treinta y cinco punto nueve por ciento (35.9%), fueron desestimados por otros fundamentos. Véase: *Informe Estadístico del Tribunal de Apelaciones*, San Juan, Puerto Rico, Año Fiscal 2013-14, págs. 72-74.

jurisdicción.[22] Durante el **año fiscal 2014-15,** el foro *a quo* desestimó mil sesenta y seis (1,066) recursos por carecer jurisdicción para atenderlos.[23] Aun así, solo desestimó dos (2) peticiones de *certiorari* por haberse solicitado en ellas la revisión de dos o más resoluciones, equivalente a un cero punto dieciocho (0.18%) de los

---

[22] Véase, *Solivan Cartagena v. González Delgado,* KLCE201301146 (Resolución del 17 de octubre de 2013) (Se solicitó la revisión de tres resoluciones).

El Tribunal de Apelaciones desestimó al menos cinco (5) recursos en los cuales se pretendió la revisión de dos o más dictámenes mediante la presentación de un solo recurso de revisión, equivalente a uno punto cincuenta y seis por ciento (1.56%) de los recursos desestimados por falta de jurisdicción por fundamentos ajenos a la temporalidad de la presentación del recurso; sin embargo, ninguno con el cuadro fáctico como el caso de autos. Véanse, *Castro Cruz v. Mun. Caguas,* KLAN201400309 (Sentencia del 30 de mayo de 2014) (En un recurso de revisión judicial se solicitó la revisión de dos resoluciones administrativas interlocutorias por lo que el recurso era prematuro); *Acevedo Cruz v. Administración de Corrección y Rehabilitación,* KLRA201400179 (Sentencia del 24 de abril de 2014) (En un recurso de revisión judicial se solicitó la revisión de dos dictámenes; sin embargo, el recurso era tardío en cuanto a ambos); *Site Max Corp. v. Constructora FL & H, Inc.*, KLAN201301700 (Sentencia del 31 de enero de 2014) (En una apelación se solicitó la revisión de dos sentencias parciales); *Bonilla Montalvo v. APNI, Inc.,* KLAN201301874 (Sentencia del 26 de noviembre de 2013) (En una apelación se solicitó la revisión de una sentencia y una resolución); *Cruz Salamán v. Depto. Corrección y Rehabilitación,* KLRA201300898 (Sentencia del 31 de octubre de 2013) (El foro *a quo* desestimó el recurso aplicando estrictamente *M-Care Compounding et al. v. Depto. Salud,* supra).

[23] De los mil sesenta y seis (1,066) recursos desestimados por falta de jurisdicción, trescientos cincuenta y dos (352) recursos, equivalente a un treinta y tres por ciento (33%), fueron desestimados por ser prematuros. Asimismo, trescientos trece (313) recursos, equivalente a un veintinueve punto cuatro por ciento (29.4%), fueron desestimados por haberse presentado tardíamente. Solamente cuatrocientos un (401) recursos, equivalente a un treinta y siete punto seis por ciento (37.6%), se desestimaron por otros fundamentos. Véase: *Informe Estadístico del Tribunal de Apelaciones*, San Juan, Puerto Rico, Año Fiscal 2014-15, págs. 58-60.

recursos desestimados por falta de jurisdicción.[24] Durante

el **año fiscal 2015-16,** el foro *a quo* desestimó mil setenta

---

[24] Véanse, *Molina González v. Cora Rodríguez,* KLCE201500431 (Resolución del 7 de abril de 2015) (En una petición de *certiorari* se solicitó la revisión de cuatro órdenes; sin embargo, el recurso era tardío en cuanto a una de ellas. El foro *a quo* solo revisó una de las tres órdenes recurridas oportunamente); *Lynn García v. Fischer,* KLCE201401262 (Sentencia del 10 de octubre de 2014) (En un solo recurso de *certiorari* se solicitó la revisión de dos resoluciones).

El Tribunal de Apelaciones desestimó al menos seis (6) recursos en los que se solicitó la revisión de dos o más dictámenes mediante la presentación de un solo recurso, equivalente a uno punto cincuenta por ciento (1.50%) de los recursos desestimados por falta de jurisdicción por fundamentos ajenos a la temporalidad de la presentación del recurso; sin embargo, ninguno con un cuadro fáctico similar al caso de autos. Véanse, *Soto Sánchez v. Banco Popular de Puerto Rico,* KLAN201500728 (Sentencia del 30 de junio de 2015)(En una apelación se solicitó la revisión de dos sentencias parciales; sin embargo, el recurso también era prematuro); *Morales Márquez v. Depto. Recursos Naturales y Ambientales,* KLRA201401209 (Sentencia del 30 de abril de 2015)(Una misma parte solicitó la revisión de dos resoluciones administrativas en un solo recurso de revisión judicial); *Vidal Vidal v. Fernández,* KLAN201500026 (Sentencia del 31 de marzo de 2015)(En una apelación se solicitó la revisión de dos sentencias parciales); *Rivera Román v. Wal-Mart de Puerto Rico, Inc.,* KLAN201401170 (Resolución del 25 de febrero de 2015)(En un recurso de apelación se solicitó la revisión de una sentencia y una resolución); *Santos Rivera v. Santos Rivera,* KLAN201402085 (10 de febrero de 2015)(En una apelación se solicitó la revisión de una sentencia y de una resolución); *Flex Deck Corp v. Depto. Vivienda del ELA,* KLAN201401628 (Sentencia del 19 de diciembre de 2014)(En una apelación se solicitó la revisión de una sentencia parcial y de una orden; sin embargo, en cuanto a la sentencia parcial el recurso también era prematuro).

Por otro lado, aplicó estrictamente *M-Care Compounding et al. v. Depto. Salud*, supra, en al menos tres (3) casos. Véanse, Burgos Colón v. Depto. Corrección y Rehabilitación, KLRA201500441 (Resolución del 11 de mayo de 2015); *Carrión Torres v. Depto. Corrección y Rehabilitación,* KLRA201500271 (Sentencia del 10 de abril de 2015); *Galarza Cintrón v. Depto. de Corrección y Rehabilitación,* KLAN201500113 (Sentencia del 27 de febrero de 2015) (El recurso también era tardío).

Sin embargo, y a pesar de haberse solicitado la revisión de varios dictámenes en un mismo recurso, en ciertas instancias el foro *a quo* optó por no desestimar el recurso. Véanse, *MUSA Developers Corp. v. Junta de Planificación de Puerto Rico,* KLRA201500365 (Sentencia del 30 de junio de 2015) (En un recurso de revisión judicial se solicitó revisión de varias resoluciones administrativas. El foro *a quo*

y tres (1,073) recursos por falta de jurisdicción.[25] No obstante, solamente desestimó dos (2) peticiones de *certiorari* por haberse recurrido en ellas de más de una resolución, equivalente a un cero punto dieciocho (0.18%) de los recursos desestimados por falta de jurisdicción.[26]

---

únicamente revisó una de ellas); *Colón Machuca v. Santos González,* KLAN201500234 (Resolución del 15 de mayo de 2015) (En una apelación se solicitó la revisión de dos sentencias parciales y una resolución. El foro *a quo* únicamente revisó la resolución porque los señalamientos de error con respecto a las sentencias parciales no fueron discutidos); *Joaquín Hidalgo v. Corporación "Everywhere Music & Entertainment" Corp.,* KLCE201300001 (Sentencia del 18 de diciembre de 2014) (En una apelación se solicitó la revisión de una sentencia parcial y de una resolución. El foro *a quo* no desestimó el recurso pues ambos dictámenes eran de un mismo pleito y tenían el mismo carácter dispositivo); *Pueblo v. Soto García,* KLCE201401338 (Sentencia del 18 de noviembre de 2014) (En una petición de *certiorari* se solicitó la revisión de dos resoluciones. El foro *a quo* no desestimó el recurso porque el peticionario estaba exento del pago de aranceles por lo que no eran necesarios presentar dos recursos separados).

[25] De los mil setenta y tres (1,073) recursos desestimados por falta de jurisdicción, trescientos quince (315) recursos, equivalente a un veintinueve punto cuatro por ciento (29.4%), fueron desestimados por ser prematuros. Asimismo, trescientos siete (307) recursos, equivalente a un veintiocho punto seis por ciento (28.6%), fueron desestimados por haberse presentado tardíamente. Solamente cuatrocientos cincuenta y un (451) recursos, equivalente a un cuarenta y dos por ciento (42%), se desestimaron por otros fundamentos. Véase: *Informe Estadístico del Tribunal de Apelaciones*, San Juan, Puerto Rico, Año Fiscal 2014-15.

[26] Véanse, *Rivera Torres v. Guerríos Rivera*, KLCE201600987 (Sentencia del 10 de junio de 2016) (Se solicitó la revisión de cuatro resoluciones con un solo señalamiento de error); *Pérez Colón v. Lorenzo Soto,* KLCE201600937 (Sentencia del 31 de mayo de 2016) (A pesar de haberse recurrido de dos resoluciones en un mismo *certiorari,* el recurso era tardío en cuanto a una de ellas).

Por otro lado, aplicó estrictamente *M-Care Compounding et al. v. Depto. Salud*, supra, en al menos dos (2) casos. Véase, *Rivera González v. Depto. Recursos Naturales y Ambientales,* KLRA201500787 (Sentencia de 31 de agosto de 2015).

Similarmente, durante el **año fiscal 2016-2017,** el Tribunal de Apelaciones solamente desestimó dos (2) peticiones de *certiorari* en las que se solicitó la revisión de más de una resolución interlocutoria.[27]

---

Sin embargo, y a pesar de haberse solicitado la revisión de varios dictámenes en un mismo recurso, en ciertas instancias el foro *a quo* optó por no desestimar el recurso. Véanse, *Puerto Rico Consumer Debt Management Co., Inc., Martínez Evangelista*, KLCE201600544 (Resolución del 28 de abril de 2016) (En una petición de certiorari se solicitó la revisión de dos resoluciones. El foro a quo, en lugar de desestimar el recurso, optó por revisar una de ellas solamente); *Ortiz Rivera v. Díaz Bonilla,* KLAN201501698 (Sentencia del 3 de marzo de 2016) (En una petición de *certiorari* se solicitó la revisión de dos resoluciones emitidas en casos distintos. El foro *a quo*, en lugar de desestimar el recurso, atendió el planteamiento relacionado a la resolución correspondiente al caso en el que se presentó el recurso); *Díaz Aviation Corp. V. Aerostar Airport Holdings*, KLAN201500760 (Sentencia del 25 de septiembre de 2015) (En una apelación se solicitó la revisión de una sentencia parcial y de una resolución. El foro a quo, en lugar de desestimar el recurso, atendió únicamente el planteamiento en cuanto a la sentencia parcial); *Banco Popular de Puerto Rico v. Vázquez Lazo,* KLAN201500590 (Sentencia del 31 de agosto de 2015) (En una petición de *certiorari* se solicitó la revisión de dos resoluciones. El foro *a quo* optó por atender únicamente el planteamiento en cuanto una de las resoluciones en lugar de desestimar el recurso).

[27] Además del caso de autos y *Cubano Calderón v. O'Neill Herrera,* CC-2017-0110, que también está ante nuestra consideración, no se ha publicado ninguno otro a la fecha de hoy.

El Tribunal de Apelaciones desestimó al menos cinco (5) recursos en el que se solicitó la revisión de dos o más dictámenes; sin embargo, el cuadro fáctico era distinto al caso de autos. Véase, *Vicente Colón v. Depto. Corrección,* KLAN201601755 (Sentencia del 19 de diciembre de 2016) (En una apelación se solicitó la revisión de una sentencia parcial y una sentencia final); *Rivera Antúnez v. Empresas Velázquez, Inc.,* KLCE201601535 (Resolución del 15 de noviembre de 2016) (En una petición de *certiorari* se solicitó la revisión de dos resoluciones. El recurso se presentó fuera de término y no se presentaron aranceles en lo absoluto); *Barletta Rivera v. Soto Román,* KLCE201601445 (Sentencia del 31 de octubre de 2016)(En una apelación se solicitó la revisión de una sentencia parcial, una sentencia *nunc pro tunc* y una sentencia final); *Tirado Flores v. ELA,* KLAN201601277 (Sentencia del 20 de octubre de 2016)(Una misma persona apeló dos sentencias de casos distintos); *Río Mar Community Association, Inc. v. Mayol Bianchi,* KLAN201601115 (Sentencia del 21 de septiembre de 2016) (En una apelación se solicitó la revisión de una sentencia parcial y de una

_____

resolución. La Jueza Brignoni Mártir emitió un voto disidente en el que indicó que hubiera revisado al menos la sentencia parcial en pro de la economía procesal, para salvaguardar el derecho a apelar y porque se había pagado aranceles correspondientes a un recurso).

Sin embargo, y a pesar de haberse solicitado la revisión de varios dictámenes en un mismo recurso, en ciertas instancias el foro *a quo* optó por no desestimar el recurso. Véanse, *Río Mar Community Association, Inc. v. Mayol Bianchi,* KLAN201601115 (Sentencia del 30 de junio de 2017) (El foro *a quo* reconsideró una sentencia anterior en la que había desestimado una sentencia en la que se solicitó la revisión de una sentencia parcial y una resolución. El Tribunal acogió el recurso y lo resolvió en los méritos por entender que ambos dictámenes estaban "íntimamente relacionadas"); *García Santos Ex Parte,* KLCE201700626 (Sentencia del 28 de abril de 2017) (En una petición de *certiorari* se solicitó la revisión de dos resoluciones. El foro *a quo* optó por revisar la primera de las resoluciones en lugar de desestimar el recurso); *Rivera Solá Ex parte,* KLCE201602204 (Sentencia del 22 de diciembre de 2016) (En una petición de *certiorari* se solicitó la revisión de dos resoluciones. El foro *a quo* atendió el recurso pues ambos dictámenes descansaban en el mismo fundamento por lo que al resolver uno se atendían ambos indirectamente); *Barrau Lake v. Barrau Lake,* KLAN201501528 (Sentencia del 15 de diciembre de 2016) (En una apelación se solicitó la revisión de una sentencia parcial y una sentencia final. El foro *a quo* reconsideró su dictamen y en lugar de desestimar el recurso lo resolvió en los méritos porque ambos dictámenes se habían emitido el mismo día y disponían de la totalidad de las reclamaciones); *Casillas Pizarro v. Autoridad de Edif. Públicos,* KLCE201600040 (Sentencia del 30 de noviembre de 2016) (En una apelación se solicitó la revisión de una sentencia parcial y de una resolución. El foro *a quo* reconsideró su dictamen y optó por revisar la sentencia parcial, en lugar de desestimar el recurso en su totalidad, para no privar a la parte de su derecho a apelar); *Banco Popular de Puerto Rico v. Mercado Rivera,* KLAN201500932 (Sentencia del 30 de noviembre de 2016) (En una apelación se solicitó la revisión de una sentencia parcial y de una sentencia final. El foro *a quo* optó por resolver el recurso debido a que ambos dictámenes se habían emitido simultáneamente); *Peña Mendoza v. Algarín Hernández,* KLCE201601298 (Sentencia del 11 de octubre de 2016) (En una petición de *certiorari* se solicitó la revisión de dos resoluciones. El foro *a quo* entendió que haber pagado aranceles para un solo recurso le daba al peticionario derecho a solicitar la revisión de una sola resolución y, por tanto, en lugar de desestimar el recurso, revisó una de las resoluciones recurridas); *Ríos Berríos v. McDougall Quiñones*, KLCE201601258 (Resolución del 12 de septiembre de 2016) (En un recurso de *certiorari* se solicitó la revisión de dos determinaciones interlocutorias. El foro *a quo* acogió el recurso en por entender que las determinaciones estaban "íntimamente relacionadas". Sin embargo, el recurso era tardío en cuanto a una de las determinaciones recurridas y, en última instancia, se denegó la solicitud de *certiorari p*or no cumplirse con los criterios para su expedición); *Pueblo v. Candelario Rivera,* KLCE201601332 (Sentencia del 19 de julio de 2016) (En una petición de *certiorari* se solicitó la revisión de dos resoluciones. El foro *a quo* limitó la revisión judicial a una de ellas).

Por lo tanto, desde que resolvimos *M-Care Compounding et al. v. Depto. Salud,* supra, el foro *a quo* ha desestimado aproximadamente siete (7) recursos de *certiorari* en los cuales los recurrentes solicitaron la revisión de dos o más resoluciones u órdenes interlocutorias. Específicamente, en dichos recursos se solicitó la revisión de un total de diecinueve (19) resoluciones. Presumiendo *arguendo* que en cada uno de los siete (7) recursos desestimados únicamente se pagaron aranceles correspondientes a un recurso, cabe concluir que hubo un déficit arancelario por una suma equivalente a los doce (12) recursos que se debieron haber instado por separado.

Tomando en consideración que por cada recurso de *certiorari* debió haberse pagado ciento dos dólares ($102.00), la suma que la Rama Judicial dejó de devengar como consecuencia de la presentación de tales recursos fue de aproximadamente mil doscientos veinticuatro dólares ($1,224.00). Cualquier abogado con experiencia en la práctica apelativa está consciente que dicha suma es ínfima comparada con el tiempo que toma y el dinero que cuesta preparar, reproducir y perfeccionar doce (12) recursos apelativos. En fin, y en abono a la norma que hoy adoptamos, entendemos que la misma no tendrá un impacto adverso significativo a nivel macro en los recaudos de la Rama Judicial *vis-à-vis* a los ahorros que puede

_____

representar para los abogados que diariamente ejercen la práctica apelativa y, en última instancia, a sus clientes.


                                        Mildred G. Pabón Charneco
                                             Jueza Asociada