ALBERTO CÓRDOVA MONTES, CARMEN SALAS MONTES y JOSÉ SALAS NOA, éste por sí y como padre con patria potestad sobre sus hijos menores de edad JOSÉ, MERCEDES, RAFAEL, LUIS, EUGENIO, ALICIA, MANUEL, ISABEL, AIDA, RAFAELA, DOLORES y JOAQUÍN SALAS MONTES, demandantes y apelantes, *v.* RAFAEL R. BAQUERO Y GUIDINZA, demandado y apelado.

No. 6358.—*Sometido:* Junio 15, 1934. *Resuelto:* Junio 30, 1934.

*Arturo J. Quiñones,* abogado de los apelantes; *Lemuel Marqués, Jr.,* abogado del apelado.

EL JUEZ ASOCIADO SEÑOR CÓRDOVA DÁVILA, emitió la opinión del tribunal.

Es ésta una acción de nulidad de ejecución de hipoteca, iniciada por José Salas Noa en su propio derecho y por los herederos de Rafaela Montes, entre los cuales figuran algunos menores de edad representados por su padre José Salas Noa, esposo de la señora fallecida Rafaela Montes.

En 18 de mayo de 1928, José Salas Noa y su esposa constituyeron hipoteca voluntaria a favor de Rafael R. Baquero sobre dos fincas urbanas ubicadas en Santurce, en garantía de cierto préstamo, del pago de sus intereses, gastos, costas y honorarios de abogado.

En 18 de agosto de 1930, el demandado, Rafael R. Baquero, inició una acción sumaria sobre cobro de crédito hipotecario contra José Salas Noa y su esposa, Rafaela Montes, alegando en dicho escrito inicial, entre otros, los siguientes hechos:

"Que los deudores demandados no han satisfecho los intereses correspondientes a los meses: marzo, abril, mayo, junio, julio y agosto de 1930, habiendo por tanto violado dichos demandados la cláusula segunda del Contrato del préstamo que estipula que si dejasen de satisfacer los intereses de dos mensualidades consecutivas se consideraría vencida toda la deuda y quedaría en aptitud el acreedor de proceder judicialmente a su cobro.

"*   *   *   *   *   *   *

"Que las cantidades en total que los demandados deben pagar son: CINCO MIL DÓLARES, importe del principal de la hipoteca; DOSCIENTOS CINCUENTA DÓLARES CON DOS CENTAVOS, importe de los intereses correspondientes a los meses de marzo, abril, mayo, junio, julio y agosto, a razón de $41.67 por cada mensualidad; los demás intereses que se devenguen al tipo del diez por ciento anual hasta el pago total de lo adeudado; CUARENTA Y OCHO DÓLARES CON VEINTE Y SEIS CENTAVOS, importe pagado por primas de seguro pagadas por el demandante; más QUINIENTOS DÓLARES para costas, gastos y honorarios de abogado del acreedor hipotecario; o sea en total CINCO MIL SETECIENTOS NOVENTA Y OCHO DÓLARES CON VEINTE Y OCHO CENTAVOS más los intereses al tipo del diez por ciento anual que se devenguen desde el día 18 de agosto de 1930 hasta el pago total de lo adeudado."

A dicho escrito inicial se acompañaron, entre otros documentos, dos recibos, que se transcriben en la demanda, libra-

dos por M. Y. Saldaña, como agente en Puerto Rico de The United Firemen's Insurance Co. of Philadelphia, creditivos de haber satisfecho don Rafael R. Baquero, por cuenta de José Salas Noa, las sumas de $9.02 y $39.24, respectivamente, por los premios de las pólizas números 11396 y 11397, las cuales continuaban en vigor hasta el día 10 de mayo de 1931.

La corte de distrito expidió una orden de requerimiento que fué diligenciada por el márshal y que dice así:

"Vista la demanda en este procedimiento y los documentos que se acompañan, se ordena que por el Secretario de esta Corte se expida mandamiento al Márshal de esta Corte para que requiera a los demandados don José Salas Noa y doña Rafaela Montes, para que en el término de treinta días a partir del requerimiento, satisfagan al demandante don Rafael R. Baquero la cantidad de CINCO MIL SETE- CIENTOS NOVENTA Y OCHO DOLLARS con VEINTE Y OCHO CENTAVOS más los intereses al tipo del diez por ciento anual que se devenguen desde el día 18 de agosto de 1930 hasta el pago total de lo adeudado sobre el importe de $5,000; correspondiendo la suma de $5,798.28 a $5,000 importe del principal de la hipoteca, $250.62 importe de los intereses adeudados correspondientes a los meses de marzo, abril, mayo, junio, julio y agosto de 1930 a razón de $41.67 cada mensualidad; $48.26 importe pagado por primas de seguro, más $500 para costas, gastos y honorarios de abogado del acreedor hipotecario; garantizadas todas dichas sumas por la hipoteca que se constituyera sobre las fincas descritas en la demanda, con apercibimiento a dichos demandados que se sacarán a pública subasta las fincas hipotecadas que se describen en el escrito inicial de este procedimiento si no verificaren el pago dentro del término fijado. Y asimismo se le ordena notifique del comienzo de este ejecutivo hipotecario al posterior acreedor Sobrinos de Ezquiaga, S. en C."

El certificado de diligenciamiento, autorizado por el márshal, demuestra que se requirió de pago a los deudores José Salas Noa y Rafaela Montes, y que se notificó al acreedor posterior, Sobrinos de Ezquiaga, S. en C. Según los demandantes, desde el poblado de Santurce, donde se practicó el requirimiento de pago, a la oficina del márshal, hay una distancia aproximada de cuatro millas.

Como segunda causa de acción se alega que desde que el demandado tomó posesión de las fincas ejecutadas, éstas han producido o debido producir cada una, una renta de $35 mensuales.

Estas son, en síntesis, las alegaciones de la demanda que tienen alguna relación con las cuestiones planteadas en este recurso.

Los demandantes solicitan que se declare nulo e inexistente *ab initio* el procedimiento ejecutivo hipotecario establecido contra ellos por Rafael Baquero y nulas todas las actuaciones derivadas de dicho procedimiento.

El demandado, Rafael Baquero, presentó una excepción previa a la demanda, alegando que ésta no aduce hechos suficientes para constituir una buena y justa causa de acción. En 13 de marzo de 1933, la corte inferior dictó una resolución declarando con lugar la excepción previa y concedió a los demandantes un término de diez días para enmendar la demanda, si es que estaban en condiciones de hacerlo. Solicitaron los demandantes que se dictase sentencia y la corte así lo hizo, declarando sin lugar la demanda, con costas, gastos y honorarios de abogado a los demandantes.

Se alega en primer término que la corte inferior erró al considerar válido el requerimiento de pago a los deudores, a pesar de no haberse satisfecho los derechos exigidos por la Ley número 17 de 11 de marzo de 1915.

Alegan los apelantes que de acuerdo con la ley citada deben pagarse al márshal por sus actuaciones además de $1 por cada emplazamiento, 25 centavos por cada milla recorrida para practicar la diligencia. Se arguye que el márshal notificó a los demandados y al acreedor posterior, y que habiendo recorrido cuatro millas al practicar la diligencia, debió cancelar $4 en sellos para cumplir con la ley. El referido funcionario, según la demanda, canceló $3 en sellos y por esta razón entienden los apelantes que el certificado de diligenciamiento es nulo, ya que no contiene los derechos exigidos por la referida ley.

Como muy bien dice la corte inferior, entre las clasificaciones contenidas en el arancel de los derechos que deben pagarse a los marshals por sus actuaciones, de acuerdo con la susodicha Ley No. 17 de 11 de marzo de 1915, no figura la diligencia de una orden de requerimiento de pago en procedimiento ejecutivo hipotecario. Sin embargo, por analogía, parece lógico que se aplique el mismo arancel exigido para un emplazamiento. El márshal requirió de pago al deudor hipotecario y a su esposa y canceló $3 en sellos de rentas internas. El exceso así satisfecho cubre las cuatro millas que según se alega hubo que recorrer para practicar la diligencia. La ley de 1915 fija un derecho de $1.00 por cada diligencia de un emplazamiento, pero guarda completo silencio con respecto a una notificación. Es ésta una actuación que no aparece incluída en el arancel. El márshal no tuvo necesidad de requerir al acreedor posterior. Las personas interesadas en las responsabilidades que se hubieran inscrito después del derecho del actor deben ser notificadas a tenor de lo dispuesto en el artículo 171 del reglamento de la Ley Hipotecaria. Requerimiento y notificación son dos cosas distintas que no deben confundirse. Entendemos que los $3 en sellos cancelados por el márshal cubren todos los derechos exigidos por la ley, tomando como base los hechos alegados en la demanda.

El artículo 6 de la referida ley de 1915 determina que serán nulos y sin ningún valor todos y cada uno de los documentos o escritos que por dicha ley se requiere lleven un sello o sellos de rentas internas a menos que dichos sellos hayan sido fijados a los mismos. Es ésta una especie de penalidad que se impone para evitar fraudes al Pueblo de Puerto Rico, que en todo caso sería la parte realmente perjudicada y la que tendría mayor autoridad para querellarse cuando se dejen de cancelar los sellos requeridos por el arancel. Las palabras de la ley, si se siguen al pie de la letra, no parecen dejar campo a la interpretación judicial. Sin embargo, puede darse el caso de que un funcionario de una corte, inadvertidamente, sin intervención de la parte y sin intención de de-

fraudar, deje de cancelar algún sello en determinado documento o cancele una cantidad menor de la requerida por la ley. Supongamos que algún tiempo después de radicada una alegación o de terminada una actuación judicial, el funcionario advierte la omisión, y la parte, a su ruego, cubre el déficit y subsana el error, ¿debe considerarse nulo *ab initio* el documento por el hecho de que se haya incurrido involuntariamente en una omisión? Si el propósito de la ley es proteger los derechos del estado y evitar fraudes al erario público, no parece lógico que una vez cubiertos los derechos, una parte que en nada se perjudica pueda aprovecharse del error alegando que la actuación judicial es nula desde su origen. A nuestro juicio la actuación judicial que adolece de este defecto puede ser anulable, pero no es nula *per se*. Un error de esta naturaleza debe poder subsanarse por la parte a quien corresponde el pago del arancel. En el presente caso, en que se pretende anular todo un ejecutivo hipotecario porque el márshal dejó de cancelar 25 centavos en sellos de rentas internas por cada milla recorrida al practicar la diligencia, las mismas alegaciones de la demanda demuestran que se cancelaron $3 en sellos y que esta cantidad es bastante para cubrir los derechos exigidos por la ley. Debe desestimarse el error apuntado.

■ Se alega además que la corte inferior cometió error al no considerar nulo e inexistente el procedimiento ejecutivo sumario por no haber expresado categóricamente las cantidades ciertas cobradas por concepto de intereses y haberse incluído en la deuda hipotecaria el pago de primas de pólizas de seguro que no estaban hipotecariamente aseguradas. No creemos que se ha cometido el error apuntado por los apelantes. El reglamento para la ejecución de la Ley Hipotecaria, en su artículo 169, último párrafo, dispone entre otras cosas que en el escrito inicial ''se señalarán categóricamente las cantidades ciertas cobradas en concepto de intereses o a cuenta del capital de la deuda, expresando también la cuantía líquida

de la reclamación que por el solo acto de iniciar el procedimiento contraerá el acreedor.''

En el escrito inicial que dió origen al ejecutivo sumario de cuya nulidad se trata, se alega que por escritura otorgada ante el notario Enrique Campillo, los esposos Salas Noa y Rafaela Montes manifestaron haber recibido de Rafael R. Baquero Guidinza en calidad de préstamo la suma de $5,000 la cual se obligaron a devolver el día 18 de mayo de 1930. También se obligaron dichos esposos a pagar intereses sobre el capital prestado a razón del 10 por ciento anual, pagándolos por mensualidades vencidas, desde la fecha de la escritura hasta el total pago al acreedor. En el hecho quinto del escrito inicial se alega que los deudores no habían satisfecho los intereses correspondientes a los meses de marzo, abril, mayo, junio, julio y agosto de 1930. En el hecho décimo se alega, entre otras cosas, que las cantidades en total que los demandados deben pagar son $5,000, importe del principal de la hipoteca, y $250, importe de los intereses correspondientes a los meses de marzo, abril, mayo, junio, julio y agosto, a razón de $41.67 por cada mensualidad. Este escrito inicial se radicó en la corte en 18 de agosto de 1930. Arguyen los apelantes que no aparecen de ningún hecho de dicho escrito las cantidades ciertas cobradas en concepto de intereses o a cuenta del capital y añaden que de acuerdo con las alegaciones los deudores dejaron de pagar los meses de marzo, abril, mayo, junio, julio y agosto de 1930 y deben pagar los intereses de esos meses más los que se devenguen; pero que no se expresa con toda precisión si los deudores satisficieron los meses anteriores a los que reclama el ejecutante. No es necesaria esta alegación. Si no bastara una simple operación aritmética para conocer la cantidad exacta reclamada por el acreedor, sumando el importe de las mensualidades vencidas y no satisfechas, el mismo escrito inicial fija en $250.02 el importe de esos intereses a razón de $41.67 por cada mensualidad. El artículo 169 del reglamento, al exigir que se señalen las cantidades ciertas cobradas a cuenta del capital

y por concepto de intereses, persigue el propósito de informar al deudor con exactitud el importe de las obligaciones vencidas y no satisfechas, tanto a cuenta del capital como a cuenta de intereses. Y en este caso el deudor, por la lectura del escrito inicial, puede fijar con exactitud la cantidad que se reclama. Los hechos desarrollados en el caso de *Martorell* v. *Crédito y Ahorro Ponceño,* 42 D.P.R. 655, citado por los apelantes, no son estrictamente iguales a los que en este caso se ventilan. Allí se alegó que vencido el crédito hipotecario el demandado hizo abonos que lo han reducido a $902.15, capitalizados intereses hasta el 30 de julio de 1925, sin que hubiese satisfecho esta suma ni los intereses al tipo del 10 por ciento anual convenido, devengados desde julio 30, 1925, hasta el presente.

En el presente caso, en el ejecutivo sumario que se trata de anular, se alegó categóricamente que los deudores José Salas Noa y Rafaela Montes adeudaban la suma de $5,000, importe del préstamo, y se fijó también con exactitud el importe de los intereses correspondientes a las mensualidades vencidas a razón de $41.67 por cada mensualidad.

En cuanto al pago de las primas de las pólizas de seguro por el acreedor, y a su inclusión como parte del préstamo en el procedimiento ejecutivo, debemos atenernos a lo convenido en la escritura de hipoteca. En la cláusula séptima de dicha escritura se consigna ''que los deudores se obligan a asegurar contra incendio las edificaciones que enclavan sobre las fincas anteriormente descritas, cada una por una suma no menor del importe del capital de que responden, endosando la póliza a favor del acreedor como garantía colateral. El acreedor se reserva el derecho de asegurar, renovar y pagar las primas que la compañía de seguros cobrare y cuyo importe acrecerá el capital del préstamo.''

Luego se establece en la escritura de hipoteca la cláusula sobre la garantía hipotecaria. En nuestro sentir, toda vez que las primas pagadas por el acreedor acrecerán el capital del

préstamo garantizado por la hipoteca, no se incurrió en error alguno al incluir la referida suma en el procedimiento ejecutivo hipotecario.

*Debe confirmarse la sentencia apelada.*