EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Carmelo Ramos Soto<br><br>Peticionario<br><br>v.<br><br>Departamento de Corrección y Rehabilitación<br><br>Recurrido | Certiorari<br><br>2023 TSPR 23<br><br>211 DPR ___ |

Número del Caso: CC-2021-0294

Fecha: 6 de marzo de 2023

Tribunal de Apelaciones:

     Panel III

Abogado de la parte peticionaria:

  Por derecho propio

Oficina del Procurador General:

      Hon. Fernando Figueroa Santiago<br>      Procurador General

      Lcdo. Omar Andino Figueroa<br>      Subprocuardor General

      Lcda. Isimar Ocasio Franco<br>      Procuradora General Auxiliar

Materia: Resolución del Tribunal con Voto Particular Disidente.

Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Carmelo Ramos Soto

    Peticionario

      v.

                                  CC-2021-0294

Departamento de Corrección y
Rehabilitación

    Recurrido

RESOLUCIÓN

En San Juan, Puerto Rico, a 6 de marzo de 2023.

Examinada la solicitud de *certiorari*, presentada por el Sr. Carmelo Ramos Soto, se deniega el recurso por incumplimiento de la Ley de Aranceles de Puerto Rico, Ley Núm. 17 de 11 de marzo de 1915, según enmendada, 32 LPRA 1476 *et seq.*, y los incisos (g)(3)(J), (g)(4)(B) y (C) de la Regla 20 de nuestro Reglamento, 4 LPRA Ap. XXI-B. El señor Ramos Soto omitió incluir los sellos de rentas internas en el recurso y no solicitó litigar como indigente. Además, no certificó que notificó su presentación al Departamento de Corrección y Rehabilitación, ni al Tribunal de Apelaciones. Asimismo, el recurso carece de los volantes de notificación de la sentencia y resolución de la que se recurre.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal Supremo Interina. El Juez Asociado señor Martínez Torres está conforme y hace constar la expresión siguiente:

Cuando la insuficiencia arancelaria se debe a la parte o su abogado no se reconoce excepción alguna que permita su subsanación. M-Care Compounding *et al*. v. Depto. Salud, 186 DPR 159, 177 (2012). Tampoco es saludable

impulsar que se eleven los autos originales en cada caso en que una parte omita presentar un apéndice como requiere el Reglamento del Tribunal, sin articular justa causa para que se le exima.

De lo que se trata es de propiciar un acceso igual a la justicia. Para ello todas las partes deben ser medidas con la misma vara, porque la dama de la justicia no tiene preferencia. Frases como "acceso adecuado a la justicia" o "sistema de justicia sensible" defienden un acceso desigual a la justicia, donde esta se imparte de manera distinta dependiendo de la identidad de las partes. Nuestro ordenamiento, en cambio, propicia la igualdad y rechaza los privilegios en la litigación.

Por eso voto conforme con la Resolución del Tribunal.

El Juez Asociado señor Estrella Martínez emitió un Voto particular disidente, al que se unió la Jueza Presidenta Oronoz Rodríguez y el Juez Asociado señor Colón Pérez. El Juez Asociado señor Kolthoff Caraballo no intervino.


María I. Colón Falcón
Secretaria del Tribunal Supremo Interina

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Carmelo Ramos Soto<br><br>Peticionario<br><br>v.<br><br>Departamento de Corrección<br>y Rehabilitación<br><br>Recurrido | CC-2021-0294 | Certiorari |

Voto particular disidente emitido por el Juez Asociado señor ESTRELLA MARTÍNEZ, al cual se unen la Jueza Presidenta ORONOZ RODRÍGUEZ y el Juez Asociado señor COLÓN PÉREZ.

En San Juan, Puerto Rico, a 6 de marzo de 2023.

En otro desenlace desafortunado para los derechos de la comunidad confinada, este Tribunal desaprovechó una vez más la oportunidad para ponerle punto final a un patrón de faltas inexcusables en el trámite institucional de la correspondencia correccional. Faltas que se magnifican al considerar que estas impactan con mayor severidad la correspondencia de los confinados dirigida a interponer reclamos en contra del propio Departamento de Corrección y Rehabilitación (Corrección).

Asimismo, este Tribunal pasó por alto una coyuntura ideal para reafirmar nuestro rol de propiciar el acceso

adecuado de los distintos sectores de la sociedad a un sistema de justicia sensible a sus realidades particulares. En esta ocasión específica, fuimos confrontados con una persona privada de su libertad cuyo reclamo no solo fue desestimado de plano erróneamente por el Tribunal de Apelaciones, sino que también adolecía de deficiencias atribuibles únicamente al organismo administrativo contra el cual se promovía una queja.

A mi juicio, procedía que este Tribunal hiciera uso de este trasfondo para reafirmar tanto el derecho de toda persona a que su caso se atienda en los méritos como la responsabilidad que tiene Corrección en el trámite de los reclamos que presentan aquellos bajo su custodia. No obstante, guiados por formalismos estrictos que de ninguna forma impedían que ejerciéramos nuestra función revisora, este Tribunal decidió cerrar sus puertas al reclamo de este confinado. Por entender que al actuar de esta forma se evadió el ejercer nuestra responsabilidad de procurar un acceso sensible y libre a los tribunales, disiento. A continuación, consigno las bases fácticas y legales que fundamentan mi postura.

## I

Esta controversia tuvo su génesis con un <u>Informe de querella de incidente disciplinario</u> emitido el 22 de julio de 2020 en contra del Sr. Carmelo Ramos Soto (señor Ramos Soto), quien se encuentra confinado. En tal informe, se

imputó al señor Ramos Soto, en lo pertinente, el interferir y retrasar el recuento de confinados.[1]

El 29 de septiembre de 2020, Corrección celebró una vista disciplinaria y, posteriormente, emitió una Resolución. En esta, halló al señor Ramos Soto incurso en interferir con el recuento. En consecuencia, le sancionó con una amonestación escrita.[2]

En desacuerdo, el señor Ramos Soto presentó una moción de reconsideración el 19 de octubre de 2020.[3] Tras no recibir respuesta de Corrección dentro del término de quince (15) días, presentó una Solicitud de revisión judicial ante el Tribunal de Apelaciones.[4]

En tal recurso, el señor Ramos Soto argumentó, entre otros asuntos, que el procedimiento administrativo

---

[1]En específico, al señor Ramos Soto le fueron imputadas ciertas violaciones a los Códigos 121, 126, 141 y 215 de la Regla 6 del Reglamento Núm. 7748 de 23 de septiembre de 2009, conocido como el "Reglamento Disciplinario para la Población Correccional". Posteriormente, solo prosperó la imputación por violación al Código 215.

[2]Véase, Anejo 4 de la petición de certiorari. Según la Resolución, el señor Ramos Soto admitió que interfirió con el recuento, pero sostuvo que ello se debió a que el sargento entró al módulo sin mascarilla y, al señalársele, respondió que "de algo tenemos que morir".

[3]Véase, Anejo 7 de la petición de certiorari. Tal información surge de la Resolución que posteriormente emitió Corrección mediante la cual declaró no ha lugar la reconsideración que presentó el señor Ramos Soto.

[4]Véase, Anejo 5 de la petición de certiorari. El recurso fue suscrito por el señor Ramos Soto el 13 de noviembre de 2020.

celebrado en su contra violó su debido proceso de ley. En particular, sostuvo que, previo a celebrarse la vista disciplinaria, fue suspendido de su trabajo en el área de Proyecto de Tablillas sin notificación previa y sin una determinación final con respecto a la querella que pesaba en su contra. Añadió que el Oficial de Querellas también fungió indebidamente como Investigador de Querellas en el procedimiento disciplinario. Asimismo, alegó que Corrección se negó a incluir en el expediente cierta prueba documental que produjo durante la vista. Razonó que no tuvo una vista justa y que la amonestación fue irrazonable, pues ya había sido castigado con la suspensión de su trabajo previo a la vista.

El 17 de diciembre de 2020, el foro apelativo intermedio emitió una <u>Sentencia</u> mediante la cual desestimó el recurso por falta de jurisdicción. Determinó que no surgía del expediente moción de reconsideración alguna relacionada con la resolución impugnada, por lo que no podía acreditarse la interrupción del término para solicitar oportunamente la revisión judicial.

Inconforme, el señor Ramos Soto solicitó la reconsideración.[5] De entrada, informó que los confinados no reciben copia de las solicitudes de reconsideración que presentan en procedimientos disciplinarios. Más importante

---

[5]El señor Ramos Soto suscribió su solicitud de reconsideración el 5 de enero de 2021.

aún, añadió que **tal solicitud debía estar en el expediente administrativo, el cual pudo haber sido elevado por orden del foro apelativo intermedio o incluido en la contestación de Corrección si el Tribunal de Apelaciones no hubiera optado por prescindir de su comparecencia.** El foro apelativo intermedio la declaró no ha lugar.

Todavía insatisfecho, el señor Ramos Soto presentó una petición de certiorari ante este Tribunal. En esta, argumentó que el Tribunal de Apelaciones abusó de su discreción al desestimar su recurso sin brindarle la oportunidad de demostrar que solicitó la revisión judicial oportunamente. A su vez, reiteró que Corrección no provee copia de las mociones de reconsideración presentadas en asuntos de querellas disciplinarias. **Enfatizó, además, que la respuesta del organismo administrativo a su solicitud de reconsideración le fue entregada el 23 de febrero de 2021,** es decir, **después** de emitida la última determinación del Tribunal de Apelaciones. Por consiguiente, solicitó que se devolviera el caso al foro apelativo intermedio para que se atendiera la controversia en los méritos.

El 25 de junio de 2021, este Tribunal emitió una Resolución en la cual concedió a Corrección un término de veinte (20) días para que mostrara causa por la cual no debía revocar la determinación del Tribunal de Apelaciones.

En respuesta, Corrección, por conducto del Procurador General, presentó un Escrito en cumplimiento de orden y

solicitud de desestimación. En este, se limitó a argumentar que el señor Ramos Soto no entregó todos los documentos necesarios para que el Tribunal de Apelaciones constatara su jurisdicción. Además, sostuvo que el señor Ramos Soto no le notificó del recurso que presentó ante este Tribunal.

Así las cosas, hoy este Tribunal opta por denegar la expedición del recurso por falta de pago de aranceles o la presentación de una petición para litigar in forma pauperis, la omisión en el expediente de los volantes de notificación y la ausencia de certificación con respecto a la notificación del recurso a la parte recurrida.

Disiento de este proceder. Por lo tanto, expuesto el cuadro fáctico que enmarca esta controversia, procedo a discutir el Derecho aplicable en el que enmarco mi postura.

**II**

La revisión judicial permite a los tribunales garantizar que las agencias administrativas actúen dentro de los márgenes de las facultades que le fueron delegadas por ley. Comisión Ciudadanos v. G.P. Real Prop., 173 DPR 998, 1015 (2008). A su vez, posibilita poder constatar que los organismos administrativos "cumplan con los mandatos constitucionales que rigen el ejercicio de su función, especialmente con los requisitos del debido proceso de ley". Íd. De esta forma, se vela por que los ciudadanos tengan "un foro al cual recurrir para vindicar sus derechos y obtener un remedio frente a las actuaciones arbitrarias de

las agencias". Íd. En términos simples, la revisión judicial constituye "el recurso exclusivo para revisar los méritos de una decisión administrativa sea ésta de naturaleza adjudicativa o de naturaleza informal". Depto. Educ. v. Sindicato Puertorriqueño, 168 DPR 527, 543 (2006).

Cónsono con ello, el Art. 4.006 de la Ley de la Judicatura, Ley Núm. 201-2003, 4 LPRA sec. 24y, dispone que serán susceptibles a la revisión judicial las decisiones, órdenes y resoluciones finales de los organismos o agencias administrativas. Ello, de acuerdo con el procedimiento establecido en la Ley de Procedimiento Administrativo Uniforme, Ley Núm. 38-2017, 3 LPRA sec. 9601 et seq. (LPAU). Así también lo afirma la LPAU,[6] la cual, a su vez, enfatiza el derecho de la parte afectada por una orden o resolución final de una agencia administrativa que haya agotado todos los remedios provistos por esta, a presentar un recurso de revisión judicial ante el Tribunal de Apelaciones. 3 LPRA sec. 9672.

En lo relevante a este caso, por mandato estatutario, los procedimientos administrativos deben ser de fácil acceso a la ciudadanía, como también económicos y efectivos. 3 LPRA sec. 9674. Por consiguiente, es imperativo que se eviten las desestimaciones de recursos, ya sea por defectos de forma o de notificación, para así viabilizar la

---

[6]Véase, 3 LPRA sec. 9671.

comparecencia efectiva de recurrentes por derecho propio y en _forma pauperis_. Íd.

Como cuestión de Derecho, la Regla 2 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, dispone que:

> Estas reglas se interpretarán de modo que propicien un sistema de justicia que provea acceso para atender los reclamos de la ciudadanía, que sea sensible a la realidad particular de los distintos componentes de nuestra sociedad y que informe a la ciudadanía sobre sus derechos y responsabilidades, conforme a los propósitos dispuestos en la Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003. A tales fines, este Reglamento está dirigido a:
>
> (1) Ofrecer acceso fácil, económico y efectivo al tribunal, eliminando obstáculos y barreras que impidan impartir justicia apelativa a los ciudadanos con reclamos válidos.
> (2) Promover la efectiva, rápida y uniforme adjudicación de casos complejos, procedimientos especiales o asuntos que ameriten atención particular.
> (3) Implantar el principio rector de que las controversias judiciales se atiendan en los méritos y no se desestimen los recursos por defectos de forma o de notificación que no afecten los derechos de las partes.
> (4) Facilitar la comparecencia efectiva de ciudadanos por derecho propio e _in forma pauperis_.
> (5) Establecer mecanismos y sistemas eficientes para la clasificación de recursos, el movimiento de los casos y el término de su resolución.[7]

---

[7]Asimismo, el Art. 4.004 de la _Ley de la Judicatura_, 4 LPRA sec. 24w, dispone que las reglas internas del Tribunal de Apelaciones:

> [T]endrán como propósito principal proveer un acceso fácil, económico y efectivo a dicho Tribunal. El reglamento interno del Tribunal de Apelaciones contendrá, sin limitarse a ello,

De tal normativa se desprende que en nuestro ordenamiento prevalece una política de apertura a los tribunales que fomenta la atención en los méritos de los recursos ante nuestra consideración. Por tal razón, este Tribunal ha sido enfático "en torno a la necesidad de evitar que la aplicación automática e inflexible de los requisitos reglamentarios prive a un litigante de su derecho de acceso a los tribunales". Álamo Romero v. Adm. Corrección, 175 DPR 314, 322 (2009); Gran Vista I v. Gutiérrez Santiago y otros, 170 DPR 174, 181 (2007).

En varias ocasiones, este Tribunal se ha expresado con respecto a la necesidad de minimizar la cantidad de casos que son desestimados. Ello, pues, "el mecanismo procesal de la desestimación como sanción debe utilizarse como último recurso". Román et als. v. Román et als., 158 DPR 163, 167-168 (2002). Es decir, el Tribunal debe cerciorarse, antes que todo, que el incumplimiento provocó un impedimento real y meritorio para poder resolver el caso en los méritos. "Con este balance en mente, el tribunal apelativo puede y debe usar medidas intermedias menos drásticas dirigidas al trámite y perfeccionamiento diligente de los recursos de

_____

reglas dirigidas a reducir al mínimo el número de recursos desestimados por defectos de forma o de notificación, reglas que provean oportunidad razonable para la corrección de defectos de forma o de notificación que no afecten los derechos de las partes, y reglas que permitan la comparecencia efectiva de apelantes por derecho propio y en forma pauperis.

apelación". Íd. De hecho, los Tribunales también deben proveer una oportunidad razonable para corregir defectos cuando estos no afecten los derechos de las partes. <u>Fraya v. ACT</u>, 162 DPR 182, 189-192 (2004).

En lo pertinente a este caso, la Regla 59 (E)(1)(d) del Reglamento del Tribunal de Apelaciones, <u>supra</u>, requiere que el recurso contenga una copia de toda moción o resolución necesaria para acreditar la interrupción y reanudación del término para presentar el recurso de revisión. No obstante, el foro apelativo intermedio tiene la facultad de, a petición del recurrente o <u>motu proprio</u>, permitir la presentación de documentos como el antes mencionado "con posterioridad a la fecha de presentación del recurso de revisión, dentro de un término de quince días contado a partir de la fecha de notificación de la resolución del tribunal que autoriza los documentos". Regla 59 (E)(2), <u>supra</u>. Ello, pues "**[l]a omisión de incluir los documentos del Apéndice no será causa de desestimación del recurso**". (Negrillas suplidas). Íd.

En fin, al ejecutar nuestra función revisora, es imperativo recordar que los tribunales deben ser "sensibles a la realidad de los distintos componentes de nuestra sociedad", incluyendo la población correccional. <u>Álamo Romero v. Adm. Corrección</u>, supra. Esto, pues, la propia <u>Ley de la Judicatura</u> nos impone la responsabilidad de propiciar a la ciudadanía el acceso inmediato y económico a un sistema

de justicia que es consciente de las circunstancias particulares de los miembros de las distintas esferas sociales. Exposición de Motivos de la Ley de la Judicatura (2003 LPR 971); Fraya v. A.C.T., supra, pág. 189.

A la luz de ello, en Álamo Romero v. Adm. Corrección, supra, este Tribunal reconoció que la condición de confinamiento necesariamente impacta el control de los reclusos en el manejo de su correspondencia. Por consiguiente:

> [E]n los casos de revisión judicial de decisiones administrativas de la Administración de Corrección en procedimientos disciplinarios instados por reclusos por derecho propio, se entenderá que el recurso fue presentado en la fecha de entrega a la institución carcelaria. Esta autoridad será responsable, a su vez, de tramitar el envío del recurso al foro correspondiente.
>
> Decidir lo contrario enervaría las disposiciones estatutarias y reglamentarias que conceden el derecho de revisión judicial a los reclusos en procedimientos administrativos disciplinarios e impondría una barrera a quienes ejerzan tal derecho pro se. Ello en contravención de la Ley de la Judicatura y en menosprecio de la importancia que reviste la revisión judicial de las decisiones administrativas, la cual "garantiza al ciudadano protección y remedio frente al organismo administrativo". D. Fernández Quiñones, Derecho administrativo y Ley de Procedimiento Administrativo Uniforme, 2da ed., Bogotá, Ed. Forum, 1993, pág. 517.

Ello emana del derecho de toda persona confinada, así reconocido por el Tribunal Supremo federal, a tener acceso a las cortes. En lo pertinente a este caso, tal derecho necesariamente abarca los medios que el miembro de la población correccional requiera para presentar ante el

sistema de justicia los agravios que puede tener con respecto a su confinamiento, como también la obligación del Estado a no interferir con ello.[8]

### III

De entrada, entiendo prudente expresarme con respecto a los fundamentos por los cuales una mayoría de este Tribunal decidió denegar el recurso del señor Ramos Soto. En primer lugar, la Mayoría señaló la falta de pago de aranceles o, en la alternativa, el que el señor Ramos Soto no presentara una solicitud para litigar in forma pauperis.

Ciertamente, la regla general que impera en nuestro ordenamiento dispone la nulidad de los escritos judiciales que son presentados sin el pago de aranceles correspondiente. Código de Enjuiciamiento Civil, 32 LPRA sec. 1481. No obstante, tal disposición reconoce varias excepciones como, por ejemplo, la indigencia de la parte peticionaria, así establecida mediante una declaración jurada. 32 LPRA sec. 1482. Mas, también se reconoce como excepción a la nulidad **"cuando la deficiencia arancelaria ocurre sin intervención de la parte ni intención de defraudar, sino por inadvertencia de un funcionario judicial, que acepta por equivocación un escrito sin pago**

---

[8]Ex parte Hull, 312 US 546 (1941), Johnson v. Avery, 393 US 483 (1969) y Younger v. Gilmore, 404 US 15 (1971) (Per curiam). En Bounds v. Smith, 430 US 817, 821 (1977), se reconoció que el alcance del derecho de un confinado a las cortes impone al Estado, no solo el deber de no interferir con tal ejercicio, sino también la obligación de facilitarlo.

**alguno o por una cantidad menor de los aranceles que correspondan**". (Negrillas suplidas). <u>M-Care Compounding v. Departo. Salud</u>, 186 DPR 159, 177 (2012); <u>Córdova v. Baquero</u>, 47 DPR 108 (1934). De la misma forma, "[t]ampoco es nulo el escrito judicial si la insuficiencia se debió a las instrucciones erróneas del Secretario del tribunal, sin intervención de la parte, colusión o intención de defraudar". <u>M-Care Compounding v. Departo. Salud</u>, supra; <u>Cintrón v. Yabucoa Sugar Co.</u>, 52 DPR 402 (1937).

En este recurso, no puede perderse de vista que el señor Ramos Soto, quien se encuentra confinado y carece de asesoramiento legal, presentó sus recursos ante ambos foros apelativos sin que se le notificara señalamiento alguno de deficiencia con respecto al pago de aranceles o la presentación de una solicitud para litigar como indigente. De hecho, el Tribunal de Apelaciones desestimó por un asunto no relacionado con los aranceles y, posteriormente, la Secretaría de este Tribunal elevó el recurso ante nuestra consideración sin señalamiento alguno. Así, incluso después de estudiar el caso, este Tribunal decidió emitir una orden de mostrar causa para atender el caso en los méritos sin que se hiciera indicación alguna al señor Ramos Soto, tanto por la Secretaría de este Tribunal como por los miembros de este Foro, de que su recurso tenía deficiencia alguna. **De hecho, ni siquiera Corrección levantó tal argumento en su**

**comparecencia ante nos a pesar de que solicitó la desestimación por otros argumentos.**

Por consiguiente, puede inferirse con cierto grado de seguridad que **el señor Ramos Soto no tenía intención alguna de defraudar al sistema judicial**, sino que, en ambos foros apelativos, se aceptó su recurso sin recibir pago de derechos alguno debido a la inadvertencia de un funcionario. **En consecuencia, considero que esta omisión debería estar sujeta a subsanación por parte del señor Ramos Soto, ya fuera mediante el pago correspondiente de los derechos o la concesión de un término para que cumpla con la presentación de la solicitud para ser eximido por razón de pobreza.** De hecho, algunos paneles del Tribunal de Apelaciones han puesto correctamente en práctica el conceder un término para que los peticionarios corrijan tal descuido y opten por presentar los aranceles o la solicitud para litigar como indigente. Después de todo, nada exige una desestimación o denegación inmediata como consecuencia de tal omisión.

A su vez, este reclamo no puede descontextualizarse de la coyuntura histórica en la que se presentó. En medio de una pandemia, el COVID-19, que produjo una restricción aún más severa al acceso de recursos en las instituciones penales, no es difícil especular con respecto a la dificultad que pudo haber confrontado el señor Ramos Soto en la obtención, reproducción y envío del formulario para litigar como indigente. En consideración al derecho del señor Ramos

Soto —y de todos los confinados— a un acceso adecuado a los tribunales, debe instrumentarse un proceso más eficiente para salvaguardar las garantías que amparan a los sectores más vulnerables, particularmente aquellos privados de su libertad que carecen de recursos y acceso a representación legal. Solo mediante la toma de acciones prospectivas para subsanar situaciones de esta naturaleza podrá evitarse la desestimación continua de recursos por deficiencias no atribuibles a los peticionarios. En fin, a mi juicio, procedía la continuación de la adjudicación de los méritos del caso o, en la alternativa, que se permitiera que el señor Ramos Soto subsanara la deficiencia señalada por la Mayoría.

En la misma línea, el segundo señalamiento en el cual descansa la denegación era también de fácil subsanación. Ciertamente, el volante de notificación de la sentencia y la resolución pudo haber sido suministrado por el señor Ramos Soto de haber sido requerido o ser corregida mediante la elevación de los autos del Tribunal de Apelaciones.

Finalmente, en lo que representa un tercer escollo que en nada obstruye nuestra capacidad para atender en sus méritos el recurso del señor Ramos Soto, la postura adoptada por la mayoría de los miembros de este Foro se apoya en la falta de notificación del recurso a Corrección o al Tribunal de Apelaciones. En cuanto a esto, toda vez que Corrección compareció sin problema mayor a argumentar su caso, no se

manifiesta razón alguna para tomar esta deficiencia como un obstáculo para ejercer nuestra facultad revisora. Por demás, reitero que tal requerimiento pone sobre personas confinadas como el señor Ramos Soto el peso de una tarea innecesaria y que solo con mucha dificultad es que les es posible realizarla.

Asimismo, existen en nuestro ordenamiento alternativas más sensibles y efectivas para efectuar tal notificación, por lo que no considero esto como motivo fundado para denegar el recurso ante nuestra consideración.[9] Al fin y al cabo, al tratarse de un reclamo en contra de una agencia gubernamental, se trata además de información que ya está en manos del Estado. Así las cosas, al considerar que ninguno de los fundamentos citados por la Mayoría conducía irremediablemente a la denegación del recurso, hubiera resuelto la controversia según expongo a continuación.

En su petición ante este Tribunal, el señor Ramos Soto afirmó que no tenía una copia de la moción de reconsideración que presentó ante Corrección, como tampoco la resolución que

---

[9]De hecho, la Regla 30.1 (A) del Reglamento del Tribunal de Apelaciones vigente dispone que, tras el recibo de un escrito de apelación de un confinado o indigente, "el Secretario o Secretaria del tribunal sentenciador o del Tribunal de Apelaciones lo notificará al Fiscal de Distrito o a la Fiscal de Distrito y al Procurador General o Procuradora General". 4 LPRA Ap. XXII-B. Es decir, que dentro de nuestro propio sistema de tribunales se han implantado medidas para alivianar la carga sobre el confinado en lo que respecta al perfeccionamiento de su recurso y, de esta forma, garantizar el ejercicio de su derecho humano a buscar acceso a la justicia.

la declaró no ha lugar. Esto último, pues el organismo administrativo no se expresó dentro del término reglamentario para ello.[10] Añadió que, de hecho, no fue hasta el 23 de febrero de 2021, cuando ya había concluido el procedimiento ante el Tribunal de Apelaciones, que Corrección le entregó una resolución relacionada con su solicitud de reconsideración ante la agencia. Por ende, razonó que el tribunal apelativo intermedio erró en desestimar su recurso sin concederle la oportunidad de demostrar la interrupción del término o verificar el expediente administrativo para así constatar que su recurso fue oportuno. Sin lugar a duda, le asiste la razón al señor Ramos Soto.

Según se relató, el señor Ramos Soto presentó una moción de reconsideración ante Corrección el 19 de octubre de 2020, la cual se recibió en el área pertinente el 22 de octubre de 2020 y fue asignada para el trámite correspondiente el 27 de octubre de 2020.[11] Sin embargo, no surge del expediente –y Corrección tampoco lo alega en su comparecencia ante este

_____

[10]Conforme dispone la Sección 3.15 de la Ley de procedimiento administrativo uniforme del Gobierno de Puerto Rico, Ley Núm. 38-2017, 3 LPRA sec. 9655, la agencia debe considerar la moción de reconsideración dentro de los quince (15) días de haberse presentado. "Si la rechazare de plano o no actuare dentro de los quince (15) días, el término para solicitar revisión comenzará a correr nuevamente desde que se notifique dicha denegatoria o desde que expiren esos quince (15) días, según sea el caso". Íd.

[11]Véase, Anejo 7 de la petición de certiorari.

Tribunal– que se le notificara al señor Ramos Soto que la agencia se excedería del término reglamentario para atender su petición. Por consiguiente, al no recibir respuesta de la agencia administrativa dentro de quince (15) días, el señor Ramos Soto diligentemente procedió a presentar un recurso de revisión judicial ante el Tribunal de Apelaciones para cumplir con los términos jurisdiccionales.

Posteriormente, el Tribunal de Apelaciones emitió una Sentencia mediante la cual prescindió de los términos reglamentarios y de la comparecencia de Corrección. A través de esta, se declaró sin jurisdicción sobre la controversia bajo el fundamento de que la moción de reconsideración presentada ante Corrección no surgía del expediente, por lo que no podía constatar su jurisdicción. Según indicó en su dictamen, el foro apelativo intermedio limitó su búsqueda a otro expediente al que hizo referencia el señor Ramos Soto y el cual se encontraba ante la consideración de otro Panel en el Tribunal de Apelaciones. Al no hallar la moción de reconsideración relacionada con la Resolución recurrida, el Tribunal de Apelaciones desestimó el recurso.

Conforme se señaló, la revisión judicial tiene el propósito de garantizar, no solo que las agencias administrativas actúen dentro de los márgenes de aquellas facultades que le fueron delegadas, sino también que la ciudadanía tenga un foro al cual acudir para vindicar sus derechos y obtener un remedio frente a las actuaciones de

los organismos administrativos. Al amparo del principio de apertura de los tribunales y el derecho humano fundamental de Acceso a la Justicia, es la responsabilidad de los foros revisores salvaguardar tales postulados y atender los casos en los méritos. Ello, con especial atención y sensibilidad a las realidades de aquellas personas que acuden a los tribunales en busca de auxilio, en particular si se trata de litigantes por derecho propio como lo es el señor Ramos Soto.

A la luz de este imperativo, nuestro ordenamiento requiere que los tribunales eviten, al extremo que sea posible, el desestimar los casos de manera autómata por defectos que pueden estar sujetos a subsanarse. Ello implica, incluso, conceder oportunidades razonables para corregir deficiencias, siempre que ello no afecte los derechos de las partes. Más importante aún, conforme establece el propio Reglamento del Tribunal de Apelaciones, **la omisión de incluir un documento en el apéndice, incluso uno necesario para acreditar la interrupción de un término, no es causa para desestimar un recurso.**[12]

En oposición directa a tal mandato, el Tribunal de Apelaciones desestimó el recurso del señor Ramos Soto sin explorar todas las otras medidas menos drásticas que tenía a su disposición para constatar su jurisdicción y atender

---

[12]Véase, Regla 59 (E)(2) del Reglamento del Tribunal de Apelaciones, supra.

el recurso en los méritos. A modo de ejemplo, el foro recurrido no parece haber contemplado la posibilidad de conceder un término al señor Ramos Soto para que demostrara la interrupción del término para solicitar la revisión judicial. Asimismo, el Tribunal de Apelaciones tampoco empleó su autoridad para requerir que la agencia elevara el expediente, según lo reconoce Corrección en su Escrito en cumplimiento de resolución y solicitud de desestimación al indicar que:

> "**no estuvo en posición de presentar el expediente administrativo concerniente a la reclamación del señor Ramos, del cual hubiese surgido que este sí presentó una solicitud de reconsideración.** Ciertamente la agencia administrativa no está obligada por disposición legal alguna para presentar de por sí el expediente administrativo correspondiente a un recurso de revisión judicial. Sin embargo, como bien conoce este Honorable Tribunal, **es práctica algo común que ante recurso[s] como el de epígrafe, el Tribunal de Apelaciones ordene al DCR a elevar el expediente concerniente. Ese proceso aquí no ocurrió en la medida que el Foro Apelativo Intermedio prescindió de los términos y escritos".**[13]

Lo que es peor, el foro apelativo intermedio ignoró enteramente todas las explicaciones válidas que ofreció el señor Ramos Soto para excusar la ausencia de tal documento. En su moción de reconsideración ante el foro recurrido, el señor Ramos Soto: (1) explicó que no poseía una copia de la solicitud de reconsideración ante la agencia porque de

---

[13](Negrillas suplidas). Escrito en cumplimiento de resolución y solicitud de desestimación, pág. 1, esc. 1.

ordinario los confinados no reciben copias de esta; (2) informó de los problemas con el uso de fotocopiadoras en la institución penal debido a las medidas de seguridad por la pandemia, y (3) señaló, correctamente, que el Tribunal de Apelaciones estaba en posición de solicitar el expediente administrativo para constatar la existencia de la moción de reconsideración ante la agencia y no lo hizo. A pesar de estas explicaciones fundamentadas, el Tribunal de Apelaciones se reiteró en su desestimación.

En este caso, los actos del Tribunal de Apelaciones abiertamente contravienen, en primer término, la encomienda estatutaria de evitar las desestimaciones por violaciones reglamentarias que son subsanables. En segundo término, la determinación recurrida también está en conflicto con el imperativo de ser sensibles a las necesidades particulares de todos los sectores de la sociedad que acuden ante los tribunales. Teniendo a su disposición una amplia gama de medidas menos drásticas para proteger su jurisdicción y asegurar el derecho del señor Ramos Soto a que un Tribunal atienda sus agravios, la desestimación del recurso por parte del Tribunal de Apelaciones carece de toda justificación y es simplemente insostenible en nuestro ordenamiento.

Entiéndase, al estar presentes alternativas para que el Tribunal de Apelaciones constatara la interrupción del término para solicitar la revisión judicial, **las cuales de haberse empleado así lo hubieran demostrado,** no hay razón

alguna para que este caso no se atendiera en los méritos. Este razonamiento aplica de igual forma a la decisión de este Tribunal de rehusarse a atender el recurso del señor Ramos Soto a causa de una deficiencia que en nada interfiere con nuestra capacidad revisora y que, de hecho, es susceptible a ser subsanada. **Al proceder de esta forma, este Tribunal incurrió en la misma conducta del Tribunal de Apelaciones, la cual pone de relieve la necesidad de que las normas reglamentarias y procesales, en específico, aquellas conducentes a garantizar que los casos se diluciden en sus méritos y no desestimados por causas subsanables, sean observadas rigurosamente por los adjudicadores.**

De la misma forma, no se puede ignorar que la deficiencia en el recurso del señor Ramos Soto que fundamentó la desestimación ante el Tribunal de Apelaciones es atribuible, única y exclusivamente, a Corrección. No se puede perder de vista que el señor Ramos Soto era incapaz de demostrar que presentó una moción de reconsideración ante la agencia toda vez que Corrección no se expresó sobre la solicitud dentro del término reglamentario y, más importante aún, tardó más de tres (3) meses en entregarle su determinación al señor Ramos Soto.

Asimismo, el expediente revela aún más faltas inexcusables en el trámite institucional de la correspondencia de los confinados. En este caso en particular, resalta la ausencia de los ponches de

Corrección, los cuales debieron hacerse constar al momento de recibir todos los escritos que presentó el señor Ramos Soto. Tal deficiencia está en desafío de lo establecido por este Tribunal en Álamo Romero v. Adm. Corrección, supra, donde dispusimos que el ponche se utilizaría como punto de partida para constatar el cumplimiento con los términos. Esta falla por parte de la agencia administrativa colocó este caso —y seguramente muchos otros— en riesgo de ser desestimado por falta de jurisdicción.

Cónsono con los lineamientos jurídicos esbozados previamente, a los confinados les ampara un derecho de acceso a las cortes que impone a las instituciones penales la obligación de no interferir con los esfuerzos para ejercerlo de aquellos privados de su libertad. En esta instancia, al fallar en plasmar el sello en todos los recursos que presentó el señor Ramos Soto durante el trámite de esta controversia, Corrección interfirió con el esfuerzo del confinado para obtener su acceso a los tribunales.

El efecto de tal omisión no puede ser subestimado. Antes de tomar acciones drásticas que inciden en las garantías de la ciudadanía, los tribunales deben tener certeza de cuándo el confinado entregó su recurso a Corrección. Ello, pues la realidad de su confinamiento pone en manos de la propia agencia objeto de revisión la responsabilidad de facilitar y no entorpecer su búsqueda de la justicia. Por la misma razón, como bien ejemplifica este

caso, también es necesario conocer cuándo Corrección entrega a los confinados las respuestas a sus reclamos. Solo de esta forma los tribunales podrán salvaguardar su jurisdicción sobre las controversias y garantizar un acceso a la justicia arraigado en una igualdad real.

Según he advertido,

> no podemos tener una visión estricta de la igualdad, sino procurar las condiciones de plena igualdad. Esa plena igualdad conlleva la capacidad de **reconocer las diferencias** de los litigantes; como por ejemplo, la realidad de un confinado que depende de que los propios funcionarios del Estado presenten el recurso ante el Tribunal para que ese foro tenga jurisdicción sobre una demanda contra el propio Estado. Es decir, se debe **EQUIPARAR a los litigantes para garantizarles igual acceso a la justicia**.

> No reconocer que hay sujetos que están en una situación sustancialmente igual, pero que a su vez hay otros que están en situaciones diferentes, nos conduciría a una uniformidad que supone regular todo de la misma manera, a pesar de que los supuestos de hecho que presenta la vida suelen ser muy distintos entre sí. En otras palabras, la igualdad entendida mecánicamente, más aplicada de modo uniforme, desemboca en **desigualdades reales**. Por lo tanto, no podemos prescindir de las exigencias concretas de la realidad social.[14]

El accidentado trámite procesal que enfrentó el reclamo de este confinado pone de manifiesto, una vez más, las graves deficiencias que obstruyen el esquema de entrega de correspondencia en Corrección. A su vez, demuestra cómo el propio sistema obstaculiza que los reclamos de los confinados sean evaluados en los méritos.

---

[14] (Negrillas suplidas). L. Estrella Martínez, _Acceso a la Justicia: Derecho Humano Fundamental_, San Juan, Ed. Situm, 2017, págs. 31-32 (citas omitidas).

Recalco que la dilación inexcusable de más de tres (3) meses en la entrega de la Resolución denegatoria de la moción de reconsideración ante la agencia, sin duda alguna, no podía servir de fundamento para avalar que se interfiera con el derecho del señor Ramos Soto a solicitar la revisión judicial ante el Tribunal de Apelaciones. Ello solo se agrava al considerar las alegaciones de que Corrección no suple copia de las solicitudes de reconsideración en procedimientos disciplinarios y que, por lo menos en ese momento, había un atraso en el servicio de fotocopias a causa del COVID-19.

Mas, la ineficiencia del sistema en Corrección se ve exacerbada en la omisión de los ponches y su efecto en la facultad de los tribunales de constatar su jurisdicción. Ello solo repercute en contra de los confinados, quienes son los que, al fin y al cabo, sufren las consecuencias de que sus reclamos, en su mayoría en contra de la propia agencia, sean desestimados a causa de tales omisiones. Este caso así lo demuestra. Como vemos, el patrón de actos deficientes por parte de Corrección en el trámite de la correspondencia legal de los confinados, así agudizado por la pandemia, creó varias lagunas procesales que impactaron el derecho del señor Ramos Soto a presentar su reclamo ante el Tribunal de Apelaciones. Ello es insostenible en nuestro ordenamiento y así debió declararlo este Tribunal.

Al denegar la expedición del recurso, este Tribunal renegó ejercer su responsabilidad de garantizar la apertura en las aulas de justicia y, de esta forma, recalcar el deber de Corrección de asegurar que la correspondencia legal de las personas bajo su custodia siga el trámite correcto, de modo que logren el acceso a los tribunales al cual tienen derecho.

**IV**

Por los fundamentos antes expresados, disiento del proceder mayoritario. En cambio, hubiera expedido el recurso solicitado, revocado la sentencia del Tribunal de Apelaciones y devuelto el caso al foro apelativo intermedio para que lo atendiera en los méritos.


                                        Luis F. Estrella Martínez
                                             Juez Asociado